604 F.2d 1309
 SENECA NURSING HOME, Woodlawn Nursing Home, Inc., Kenwood
View Nursing Home, Halstead Nursing Center, Inc., Northeast
Nursing Center, Inc., North Central Nursing Center, Topeka
Convalescent Center, Eventine Convalescent Center, Inc., Ivy
Manor Nursing Home, Inc., Stafford Homes, Green Meadows
Nursing Center, Inc., Terrace Gardens Skilled Nursing
Center, Cedar House, Inc., et al., Plaintiffs-Appellees,
v.
The SECRETARY OF SOCIAL AND REHABILITATION SERVICES OF
KANSAS (Substituted for the Kansas State Board of
Social Welfare), Defendant-Appellant.
 No. 77-1385.
 United States Court of Appeals,
Tenth Circuit.
 Argued Sept. 28, 1978.
Decided Aug. 24, 1979.
Rehearing Denied Oct. 5, 1979.
 
 T. Richard Liebert of Liebert & Liebert, Coffeyville, Kan., and Jack A. Quinlan of Scott, Quinlan & Hecht, Topeka, Kan., for plaintiffs-appellees.
 Bruce A. Roby, Topeka, Kan. (Charles V. Hamm, Topeka, Kan., with him on the brief), for Secretary of Social and Rehabilitation Services of Kansas, for defendant-appellant.
 Before McWILLIAMS, McKay and LOGAN, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 This case concerns payments due sixteen Kansas nursing homes for services provided to welfare patients under state-administered federally-aided programs. A class action suit was brought on behalf of the nursing homes against the Kansas State Board of Social Welfare, now the Secretary of Social and Rehabilitation Services (SRS). The case was removed from state to federal court, where the various causes of action, except the determination of the precise amounts owing each nursing home, were tried and determined in favor of the nursing homes. In Seneca Nursing Home v. Kansas State Board of Social Welfare, 490 F.2d 1324 (10th Cir.), Cert. denied, 419 U.S. 841, 95 S.Ct. 72, 42 L.Ed.2d 69 (1974), we upheld the removal as involving federal questions under the Social Security Act. We affirmed the ruling of the trial court that the nursing homes were entitled to payment under Kan.Stat.Ann. § 39-708(x) according to the standard of "reasonable, usual and customary charges."[1] Also affirmed were trial court holdings that: administrative regulations issued by the Board of Social Welfare were legally ineffective because the payment standard set forth therein cost plus allowable profit was inconsistent with the statutory standard of Kan.Stat.Ann. § 39-708(x); the nursing homes were medical assistance providers within the Kansas law; and a unilateral contract existed between the homes and SRS for payment for services to qualified patients.
 
 
 2
 The case was remanded for determination of the amounts recoverable by the nursing homes for the services provided during the period involved, May 12, 1967 to July 1, 1971. After trial, the court entered final judgment on claims of 16 of the nursing homes, separated for trial purposes, awarding different specific amounts to each home. SRS has appealed from rulings made by the trial judge in the course of those proceedings:
 
 
 3
 (1) refusing to consider offsets and counterclaims asserted by SRS for alleged overpayments made by the state agency to the individual homes for patients other than those for whom claims were filed by the nursing home;
 
 
 4
 (2) permitting the nursing homes to collect from SRS for charges not proved to be uncollectible from the patients' personal resources; and
 
 
 5
 (3) awarding of prejudgment interest of 6% On claims allowed against SRS.I
 
 
 6
 We consider first the court's refusal to consider the setoffs and counterclaims asserted by SRS relating to alleged overcharges collected by the nursing homes on other patients. At the first pretrial conference after remand the court declared, Inter alia, its intent to consider the manner in which the claims should be "prepared, presented, and proven," and the form to be utilized. Counsel were specifically directed "to advise the Court through memorandum briefs as to any question of law which they believe the Court should consider." The order noted that SRS had assumed the position it had previously paid the reasonable, usual and customary charges and the homes were entitled to recover nothing.
 
 
 7
 A second pretrial order, among other things, announced approval of the form of claim to be used to establish "a prima facie case for the usual and customary and reasonable charges of the particular member." The form itself provided that an individual claim would be filed with respect to each patient, showing the usual and customary charges, payments and other credits. No reference was made in this order to any allegations or claims for offset, or counterclaims, or objection to the form by SRS, nor is there anything in the record submitted on appeal concerning such objections or contentions until after the fourth pretrial order.
 
 
 8
 The fourth pretrial order requires three specified nursing homes to make their records available to SRS for inspection and audit to determine the accuracy of claims which were filed by those homes, and to determine if the "usual, customary and reasonable charges" were utilized in filing the claim. The order directed that "objections, if any, . . . (by SRS) to any of the claims . . . shall likewise be reduced to writing and contained in the written report." It declared the report should be in the form of a responsive pleading or answer and present "any and all defenses of the Defendant to the claims of (the nursing home)."
 
 
 9
 It was the answer by SRS after audit which raised the questions of setoff and counterclaim for overpayments. With respect to the claim by one home the allegations were as follows:
 
 
 10
 B. $4,898.45 as to the claims of the Samaritan Home, Inc., are challenged as being properly offset by overpayments of other welfare recipients receiving services in this facility during the identical time period. The attached Counterclaim as against the Samaritan Home, Inc. is also herein adopted by reference.
 
 
 11
 C. The entire amount of the claims of the Samaritan Home, Inc. is challenged as being incorrect in that a computation of the lowest charge being paid by private recipients during each of the claimed periods results in a determination that the Samaritan Home, Inc. has already been overpaid for its services. It is alleged that the Secretary of Social and Rehabilitation Services of Kansas should not at any time pay rates to exceed that of the lowest paying private patient for similar services in that it is inappropriate for the welfare program to subsidize private paying patients, to escalate the rates of private paying patients, and to in effect award welfare benefits to private paying patients who are neither shown nor determined to be eligible for welfare benefits. The attached Counterclaim as against the Samaritan Home, Inc. is also herein adopted by reference.
 
 
 12
 D. Payment of any remaining amount of the claims of the Samaritan Home, Inc. is further challenged as being unreasonable in that such payments would cause the defendant Secretary of Social and Rehabilitation Services of Kansas to exceed its appropriation amounts which is beyond statutory duties and powers of this single, state agency.
 
 
 13
 The counterclaim is essentially a repetition:
 
 
 14
 5. That the report on results of discovery procedures as it pertains to the Samaritan Home, Inc. which is attached and which is adopted by reference as a part of these counterclaims indicates that the Samaritan Home, Inc. has already been overpaid by the amount of $4,898.45 in payments already made to other welfare recipients for the same time period as for that of the claims which were submitted by the Samaritan Home, Inc. The Samaritan Home, Inc. has further been overpaid in the amount of $39,774.91 by overpayments made by the Secretary of Social and Rehabilitation Services of Kansas and its predecessor agency for charges by the Samaritan Home, Inc. which exceeded its lowest usual and customary charges which were charged against private paying patients for similar time periods.
 
 
 15
 An examination of the exhibits indicates most of the setoff and counterclaim is based upon the SRS contention that the usual and customary charges may not exceed those made to the lowest private paying patient in the home during similar time periods. But a small portion ($4,898.45 in the quoted example) is alleged overpayment with respect to patients for whom no claim was filed by the nursing home, based upon the SRS perception of usual and customary charges with respect to claims which the home did file. Each of these patients apparently paid some part of the bills from personal funds, and it is unclear whether the nursing home charges included extra cost items such as special laundry, beauty shop expenses, medicine, or the like.
 
 
 16
 The nursing homes moved to strike all of the offset and counterclaim allegations quoted above. The actual motion is not a part of the appellate record, but the court's ruling upon the motion says:
 
 
 17
 The plaintiffs have presented a motion to strike these allegations from the separate answers filed by the State Secretary for the reason that they do not constitute defenses under the previous rulings of this Court, upheld by the Court of Appeals, and because they are outside the issues defined by the pretrial orders and rulings of the Court.
 
 
 18
 The Court finds that the motion should be sustained for the reasons asserted.
 
 
 19
 Defendant State Secretary has filed a counterclaim against some of the plaintiffs contending that plaintiffs were overpaid because claims submitted to defendant and paid by it exceeded the lowest usual and customary charges which were charged against private paying patients for similar periods.
 
 
 20
 Plaintiffs have presented their motion to dismiss these counterclaims because the claims attempted to be raised are outside the issues defined in the Court's pretrial orders and previous rulings.
 
 
 21
 There is still another sound reason why a motion to dismiss the counterclaims should be sustained. The counterclaim does not state a claim upon which relief may be granted.
 
 
 22
 Thus, the court appears to act both on grounds these defenses are outside the scope of the pretrial order and that they do not state a valid claim for relief. The only other evidence in the record on the reasoning of the court is an exchange whereby the trial judge simply refused to agree with SRS's counsel that the usual and customary charges were limited to the lowest charge made to any private paying client. He asserted such was not his intention in his original ruling, nor understanding of our ruling affirming his decision.
 
 
 23
 As we view the trial judge's action, he was saying, correctly, that SRS, by asserting defenses that it could not exceed its legislative appropriations and the lowest charge made to private paying clients must be the "reasonable, usual and customary" charge, was raising issues which had already been decided against it. To that extent the assertions could not be considered to state a claim upon which relief could be granted. See also Rhodes v. Harper, 211 Kan. 820, 508 P.2d 959, 968, Op. modified, 212 Kan. 500, 512 P.2d 354 (1973).
 
 
 24
 Insofar as the setoff was asserted with respect to overpayments by SRS to the nursing home concerning patients other than those for whom underpayment claims were filed, and not based upon the lowest private paying patient argument, the ruling must stand or fall upon the pretrial orders. It is the general rule that a defendant may assert as a counterclaim any claim it has against the plaintiff, Fed.R.Civ.P. 13(b), and that such claims are compulsory if they arise out of the same "transaction or occurrence." Id. 13(a). Nevertheless, the purpose of the pretrial includes simplifying the issues, determining needed amendments to pleadings, and obtaining admissions which will avoid proof requirements at trial; I. e. to establish the ground rules for the trial itself. Fed.R.Civ.P. 16. The pretrial order measures the dimensions of the lawsuit, both in the trial court and on appeal. Hodgson v. Humphries, 454 F.2d 1279 (10th Cir. 1972). A pretrial order will not be altered absent a showing of "manifest injustice" to the moving party, Fed.R.Civ.P. 16; Taylor v. Reo Motors, Inc., 275 F.2d 699 (10th Cir. 1960); or if there is an abuse of discretion by the trial judge. Globe Cereal Mills v. Schrivener, 240 F.2d 330 (10th Cir. 1956).
 
 
 25
 Obviously the trial court thought SRS had approved the claim form, which set the structure for the proof, and by its failure to raise the setoff and other arguments until after the fourth pretrial order had foreclosed itself from questioning overpayments to individuals for whom no claim form had been filed. The fourth pretrial order states SRS will file a responsive pleading setting forth "all defenses," but this is read by the trial judge to refer to defenses to the individual claims being so filed.
 
 
 26
 It is a close question whether these pretrial orders ought to be read to foreclose offset defenses involving patients for whom no claim form has been filed. Nevertheless, one purpose of a pretrial order is to simplify the litigation process by avoiding unnecessary expense and delay. Holcomb v. Aetna Life Ins. Co., 255 F.2d 577 (10th Cir.), Cert. denied, 358 U.S. 879, 79 S.Ct. 118, 3 L.Ed.2d 110 (1958). Ultimately the trial court here will have to determine claims of more than a hundred nursing homes, involving thousands of patients. By directing partial summary judgment on uncontested individual claims, obtaining approved forms, and directing objections be in the form of responsive pleadings, the court was attempting to simplify handling these old claims dating from 1967 to 1971. If individual overpayments were made by SRS with respect to other patients in the particular nursing home during that four-year period, each such case would stand upon its own facts. Individual suits could be brought with respect to those overpayments. SRS's claim against the home would not arise out of the same transaction or occurrence as the claims filed and adjudicated in this action, to be regarded as a compulsory counterclaim.
 
 
 27
 The effect of permitting SRS to inject these other claims, after thousands of the forms approved by the previous pretrial orders had been filed, is likely to further delay resolution of this already stale matter which has been before this court twice. We cannot say the court committed an abuse of discretion in its interpretation of its pretrial order or caused manifest injustice to SRS by denying consideration of the offset claims in this litigation.
 
 II
 
 28
 A second question is whether SRS can refuse payment with respect to nursing home charges allegedly attributable to uncollected private liabilities payable from other patient resources. In essence SRS argues that when it has established a formula as to how much the patient should be able to provide from his or her own private resources, it agrees to pay only the difference between that sum and the total "reasonable, usual and customary" charges of the nursing home. It argues the nursing home must demonstrate it has exhausted all efforts, apparently including legal action, in an attempt to obtain the payments the patients are to provide from their own resources before SRS can be required to pay such charges. It is not clear SRS agrees it should pay the charges even if all collection efforts fail; but at least the argument appears to be that the state agency is no more than a guarantor of last resort. We are not persuaded.
 
 
 29
 Under Kan.Stat.Ann. § 39-708(x) as it then read, the law required the state board to "take such action as may be necessary to assure that . . . (medical providers) shall be paid their reasonable, usual and customary charges." We believe the statute was intended to assure payment to the nursing homes to encourage them to take on these welfare patients, and that the burden of these uncollected sums should be on SRS for welfare cases.
 
 
 30
 In so holding we are influenced by the fact the Federal Social Security Act sections involved, 42 U.S.C. §§ 1381 Et seq. (Title XVI) and42 U.S.C. §§ 1396 Et seq. (Title XIX), provide federal grants to carry at least a major portion of the medical and other care for these individuals. The state plan for providing this care must comply with federal guidelines. Kan.Stat.Ann. §§ 39-701 Et seq. creates a duty in SRS to administer the state program to qualify for federal funding. The obligations for determining eligibility, and enforcing the rules with respect to private resource limitations for eligibility, are placed directly upon the state agency. It seems reasonable that SRS, which has the file and the individual's financial information on which the division of responsibility for the nursing home bill was established, should bring any legal action necessary against the welfare recipient for his failure to comply with the guidelines.
 
 
 31
 But most importantly, our prior case affirmed the trial judge's holding that a contract exists between the nursing homes and SRS for payment. The state agency is the obligor under the unilateral contract, and it is proper for the nursing home to look to SRS for payment of its bill on welfare patients. See also Rhodes v. Harper, supra.
 
 III
 
 32
 The final question on this appeal is whether the court properly awarded prejudgment interest. Kan.Stat.Ann. § 16-201 establishes 6% Per annum interest on "money due and withheld by an unreasonable and vexatious delay of payment or settlement of accounts" in the absence of an agreement for a different rate.
 
 
 33
 Shapiro v. Kansas Pub. Employees Retirement Sys., 216 Kan. 353, 532 P.2d 1081 (1975), awarded prejudgment interest against the Kansas Public Employees Retirement System (KPERS) for wrongfully withholding accidental death benefits from the widow of a deceased KPERS member. The decision was based on finding an express contract existed between employee-members and KPERS, and that since KPERS is suable on contractual obligations, a proper portion of damages would be prejudgment interest on the death benefits withheld. Our case is factually similar: a contract existed between the nursing homes and SRS, payment was wrongfully withheld after the homes performed their contractual obligations, and suit was brought against a state agency that was properly suable. Kan.Stat.Ann. § 39-708(c), (k). The amount due was sufficiently certain to qualify as a liquidated sum. See also Henderson v. Hassur, 225 Kan. 678, 689, 594 P.2d 650, 660 (1979).
 
 
 34
 AFFIRMED.
 
 
 
 [1]
 The version of § 39-708(x) then in effect read in part:
 The state board shall take such action as may be necessary to assure that licensed practitioners, within the scope of their practice as defined by state law who provide professional services under the provisions of the federal social security act, shall be paid their reasonable, usual and customary charges. . . .
 The section was amended, effective July 1, 1971, deleting "usual and customary," as well as making other changes not relevant here. 1971 Kan.Sess.Laws c. 153, § 1.