**FLORENCE NIGHTINGALE NURSING HOME, Plaintiff-Appellee,**

v.

**Cesar PERALES, individually and as Commissioner of the New York State Department of Social Services, and George Gross, individually and as Administrator/Commissioner of the New York City Human Resources Administration, Defendants-Appellants.**

**Nos. 585, 586, Dockets 85–7755, 85–7759.**

United States Court of Appeals, Second Circuit.

Argued Dec. 12, 1985.

Decided Jan. 24, 1986.

Judith A. Gordon, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen., Judith T. Kramer, Florence E. Abrams, Asst. Attys. Gen., New York City, on brief), for State defendant-appellant.

Lori Finsterwald, New York City (Frederick A.O. Schwarz, Jr., Corp. Counsel, Stephen J. McGrath, New York City, on brief), for City defendant-appellant.

William Dunnegan, New York City (Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, on brief), for plaintiff-appellee.

Rudolph W. Giuliani, U.S. Atty., Michael D. Patrick, Sp. Asst. U.S. Atty., Steven E. Obus, Asst. U.S. Atty., Annette H. Blum, Regional Atty. and Joseph V. Willey, Asst. Regional Atty., Dept. of Health & Human Services, New York City, submitted a brief for amicus curiae U.S. Dept. of Health and Human Services.

Before KAUFMAN, TIMBERS and NEWMAN, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

The issue on this appeal is whether losses resulting from non-payment of money owed by Medicaid patients, despite reasonable collection efforts, are to be borne by the medical care providers to whom the money is owed or are to be reimbursed out of public funds. The State of New York and the City of New York appeal from a judgment of the District Court for the Southern District of New York (Richard Owen, Judge) granting appellee Florence Nightingale Nursing Home ("Nightingale") partial summary judgment and enjoining the State and City from refusing to reimburse Nightingale for amounts owing from Medicaid patients. Appellants contend that the District Court's decision was incorrect because the reimbursement Nightingale seeks is prohibited by federal statutes and regulations. The State also argues that it should have been allowed to implead the Department of Health and Human Services ("HHS"). Because we agree with appellants' view of federal law, we reverse the reimbursement order and need not reach the third-party issue.

### Background

New York State is a participant in the Medicaid program, Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, which provides federal financial assistance to states that choose to pay certain medical expenses of the needy. Every state that participates must submit a plan describing its medical assistance program. Upon approval of its plan by the Secretary of HHS, the state becomes eligible for partial federal reimbursement of expenditures made in accordance with the approved plan. Individuals eligible for Medicaid do not receive direct payments for their medical expenses. Instead, the institution providing care bills the state, at rates established by the state, for allowable Medicaid care costs incurred and obtains reimbursement. The state in turn bills the Health Care Financing Administration of HHS, which then reimburses the state at the specified federal financial participation rate (50 percent in New York).

Medicaid recipients who are admitted to nursing homes and who have income exceeding a specified level must pay for a portion of their care. The amount to be paid by the patient is determined by sub-

tracting from the patient's income a relatively low "personal needs allowance." Under New York State's medical assistance program, the amount that remains is referred to as "net available monthly income" or "NAMI."[1] Between July 1, 1976, and July 2, 1979, the State imposed the initial burden of collecting NAMI on institutional providers such as Nightingale but permitted resubmission of bills when providers were unable to collect the funds due. In those cases, the State[2] paid the providers the amounts of uncollected NAMI. The State then changed its policy, advising providers that they and not the State would be responsible for unpaid NAMI. This change was retroactive, effective June 1978.

Nightingale sued, seeking to enjoin the State from refusing to reimburse it for NAMI it claims is owing and uncollectible from Medicaid patients. The District Court denied the State's motion to dismiss the action, *Florence Nightingale Nursing Home v. Blum*, 570 F.Supp. 285 (S.D.N.Y. 1983), and later granted Nightingale partial summary judgment on the ground that the federal statutory and regulatory scheme requires states participating in the Medicaid program to bear the risk of patient non-payment. The State and City appealed the ensuing injunction ordering prospective reimbursement. The claim for retrospective reimbursement remains pending.

### Discussion

The District Court's reasoning, expressed in its ruling on the motion to dismiss, is that 42 U.S.C. § 1396a(a)(13)(E), 42 C.F.R. § 447.15, and *Seneca Nursing Home v. Secretary of Social and Rehabilitation Services of Kansas*, 604 F.2d 1309 (10th Cir.1979), support the conclusion that

institutional providers have a right to reimbursement from the State for uncollectible NAMI. We disagree.

 During the relevant time period, section 1396a(a)(13)(E) required a state plan to provide for "payment of the skilled nursing facility and intermediate care facility *services provided under the plan* on a reasonable cost basis, as determined in accordance with methods and standards which shall be developed by the State on the basis of the cost finding methods approved and verified by the Secretary ..."[3] (emphasis added). The District Court determined that the statute "clearly calls for a cost-based reimbursement program." 570 F.Supp. at 288. But the District Court did not reckon with the fact that "reasonable cost basis" applies only to the cost of "services provided under the plan." In authorizing reimbursement of providers for Medicaid care costs, Congress clearly intended *not* to reimburse for costs not covered by Medicaid. NAMI represents the amount that a patient is required to contribute toward his or her care. This contribution reduces the amount that the patient is eligible to have paid on his or her behalf under the Medicaid program. *See Friedman v. Berger*, 547 F.2d 724, 726–27 (2d Cir.1976), *cert. denied*, 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977). It is arguable that NAMI payments remaining uncollected despite reasonable collection efforts are an overhead cost reimbursable like all other costs of providing covered services. But the Secretary's view, expressed in an amicus brief, that uncollected NAMI is not reimbursable is the more reasonable interpretation and is entitled to

---

1. The federal regulations refer to this as "[a]pplication of patient income to the cost of care," 42 C.F.R. §§ 435.725, 435.832 (1984).

2. Prior to December 1, 1978, the New York State Department of Social Services delegated to the New York City Human Resources Administration the task of receiving and evaluating claims by New York City nursing homes for services rendered to New York City residents.

3. Section 1396a(a)(13)(E) was amended in 1980 and was replaced by the present section 1396a(a)(13)(A), which requires that state plans provide for payment to providers based on "rates ... which the State finds ... are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities...." Pub.L. No. 96–499, § 962(a) (1980). *See also* Pub.L. No. 97–35, § 2173(a)(1)(C) (1981) (renumbering subsections).

"particular deference." *DeJesus v. Perales*, 770 F.2d 316, 327 (2d Cir.1985).

This reading of the statute is plainly supported by the federal regulations, which make clear that state Medicaid agencies may not pay institutions any amounts that are the patient's responsibility. The regulations state that "[t]he agency must reduce its payment to an institution, for services provided to an individual ..., by the amount that remains after deducting the amounts specified in paragraph (c) of this section [*i.e.*, the individual's personal needs allowance], from the individual's income." 42 C.F.R. §§ 435.725, 435.832 (1984). The regulations are consistent with the statutory plan that Medicaid funds not be paid to reimburse those costs that patients with resources of their own can afford.

■ The regulatory scheme is not altered by 42 C.F.R. § 447.15. According to section 447.15, "[a] State plan must provide that the Medicaid agency must limit participation in the Medicaid program to providers who accept, as payment in full, the amounts paid by the agency...." The District Court construed this to mean that states rather than providers should be the guarantors of payment. 570 F.Supp. at 288. This interpretation is inconsistent with both the statute and the other regulations. Section 447.15 does not discuss the agency's purported responsibility to the provider for costs of care that are the patient's responsibility. It simply prevents providers from seeking contributions from patients beyond the limits set by Medicaid.

■ Nor does *Seneca Nursing Home*, *supra*, cited by the District Court, aid the appellee. In that case, the Tenth Circuit held that a Kansas statute required the state agency to reimburse medical providers for uncollected patient contributions. 604 F.2d at 1314–15. As we have stated, 42 U.S.C. § 1396a(a)(13)(E) required payment by the state only of the cost of services covered by Medicaid. The statute was silent on the consequences of a state's decision voluntarily to reimburse providers for costs not covered by Medicaid, such as patients' NAMI. However, nothing in *Seneca Nursing Home* permits a state that makes such voluntary reimbursement to receive federal reimbursement for such payments. In any event, there is no New York statute analogous to the Kansas statute in *Seneca Nursing Home*.

## Conclusion

Both the statute and the regulations make clear that the financial responsibility for patient NAMI is not borne by the Medicaid program. The burden of uncollectible NAMI does not fall on the city, state, or federal government but rather on the institutional provider. The judgment of the District Court is reversed, the injunction is vacated, and the cause is remanded with directions to enter judgment for the defendants.

