FILED

MAR 13 2018

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

### UNITED STATES BANKRUPTCY APPELLATE PANEL
### OF THE NINTH CIRCUIT

In re:                              )    BAP No.   CC-17-1171-FSTa
                                    )              CC-17-1172-FSTa
SHELLIE MELISSA HALPER,             )              (Related)
                                    )
            Debtor.                 )    Bk. No.   1:09-bk-23807-GM
_____     )
SHELLIE MELISSA HALPER,             )    Adv. No.  1:11-ap-01319-GM
                                    )
            Appellant,              )
                                    )
v.                                  )
                                    )
TWIN PALMS LENDING GROUP, LLC,      )
                                    )
            Appellee.               )
_____     )
SHELLIE MELISSA HALPER,             )    Adv. Pro. 1:11-ap-01317-GM
                                    )
            Appellant,              )
                                    )
v.                                  )    **MEMORANDUM**[*]
                                    )
SOLOMON M. COHEN,                   )
                                    )
            Appellee.               )
_____     )

Argued and Submitted on February 22, 2018
at Pasadena, California

Filed – March 13, 2018

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Geraldine Mund, Bankruptcy Judge, Presiding

_____

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, see Fed. R. App. P. 32.1, it has no precedential value, see 9th Cir. BAP Rule 8024-1.

Appearances:    Michael D. Franco argued for appellant Shellie Melissa Halper; Allan D. Sarver argued for appellees Twin Palms Lending Group, LLC and Solomon M. Cohen.

Before: FARIS, SPRAKER, and TAYLOR, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtor Shellie Melissa Halper refused to sit for her deposition in two related adversary proceedings for over five years, first invoking her Fifth Amendment privilege against self-incrimination, then citing a family illness, then claiming her own illness, and finally reasserting her (by then inapplicable) Fifth Amendment privilege. Appellees Twin Palms Lending Group, LLC ("Twin Palms") and Solomon M. Cohen (collectively, "Lenders") sought terminating sanctions for her discovery abuses. The bankruptcy court gave her a final chance to comply, ordering her to pay $40,000 (a portion of her adversaries' attorneys' fees) and appear for her deposition. When she failed to comply, the bankruptcy court granted default judgment in favor of Twin Palms and Mr. Cohen and awarded them nondischargeable judgments of $2.38 million and $9.44 million, respectively.

On appeal, Ms. Halper argues that the bankruptcy court erred in granting the Lenders default judgment. We AFFIRM.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND[2]

### A.    Prepetition events

In or around 2007, Ms. Halper and her business partner Ronald Stover, through various entities, solicited loans from dozens of lenders allegedly to fund the purchase and development of real property located in Mexico (the "Mexico Investment"). Two of those lenders were Mr. Cohen and Twin Palms.

Mr. Cohen alleged that, beginning in February 2007, he made a total of ten loans to Ms. Halper totaling $2.9 million. Initially, the loans were intended to fund the Mexico Investment. In the summer of 2007, Ms. Halper and Mr. Stover told Mr. Cohen that they needed money to fund litigation against Larry Flynt (the "Flynt Litigation"), the settlement of which was expected to generate over $15 million. Mr. Cohen agreed to release the collateral securing some of the loans, extend the maturity date on some of the loans, and lend additional funds, based on the representation that Ms. Halper and Mr. Stover would repay him in full out of the settlement funds received in the Flynt Litigation. Ms. Halper further represented that they would record a replacement mortgage on the Mexico property in favor of Mr. Cohen. But despite settlement of the Flynt Litigation in January 2009, Ms. Halper never repaid Mr. Cohen or recorded a replacement mortgage.

Twin Palms similarly alleged that Ms. Halper and Mr. Stover

---

[2] We exercise our discretion to review the documents on the bankruptcy court's electronic docket, as appropriate. See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.), 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

3

solicited three loans from Twin Palms totaling $455,000 for the Mexico Investment. When Ms. Halper defaulted on the loans and subsequent loan modification agreements, she told Twin Palms that she would receive fifty percent of the settlement proceeds of the Flynt Litigation and would use that money to repay Twin Palms. To date, Ms. Halper has not followed through on her promise.

**B.   The bankruptcy case and adversary proceedings**

On October 19, 2009, Ms. Halper filed her chapter 11 bankruptcy petition, which was later converted to chapter 7.

Mr. Cohen and Twin Palms filed their respective adversary proceedings against Ms. Halper in April 2011. The Lenders each alleged that Ms. Halper had fraudulently induced them to loan money for the Mexico Investment. Mr. Cohen alleged that he had been damaged in the amount of $6.2 million plus punitive damages, attorneys' fees, and costs, and Twin Palms sought damages totaling $455,000 plus interest, penalties, punitive damages, attorneys' fees, and costs. The Lenders requested a determination that the debts were nondischargeable under § 523(a)(2)(A).

**C.   The Fifth Amendment stay and other delays**

On September 28, 2011, Ms. Halper filed a motion to stay the adversary proceedings, citing her Fifth Amendment privilege against self-incrimination. She alleged that she recently discovered that the Federal Bureau of Investigation and the U.S. Attorney's Office were investigating her for possible criminal activity relating to the alleged fraud and that her counsel advised her to assert her Fifth Amendment rights in anticipation of an impending indictment.

4

The Lenders did not oppose the stay motion and entered into a stipulation with Ms. Halper to stay the adversary proceedings for one year. The bankruptcy court entered an order granting the stay motion and setting a status conference one year out.

Over the next three years, the parties requested six continuances for various reasons including Ms. Halper's continued assertion of her Fifth Amendment privilege and the pending resolution of the state court claims against Mr. Stover.

By May 2015, the Lenders wanted to move forward with discovery. In their joint status report, the Lenders stated: "The matter is ready to proceed. There is no pending investigation by the FBI. Plaintiff obtained a $23 million fraud judgment against Defendant's partner. Case is ready to move forward." In contrast, Ms. Halper contended: "Defense counsel is unaware of any determination by the FBI that there is no pending investigation. . . . This case is not ready to move forward as the Defendant still has her 5th Amendment rights against self incrimination to protect."

Following a hearing in May, the bankruptcy court terminated the stay of the adversary proceedings because the statute of limitations on the supposed criminal charges had run. It ordered that the parties "may recommence litigation in the Adversary Proceeding, and discovery may immediately proceed[.]"

The bankruptcy court held another hearing in June to reset Ms. Halper's deposition. The Lenders' counsel represented that he had contacted the U.S. Attorney's Office, which informed him that "there was no formal proceeding ever pursued by the federal prosecutor." Counsel argued (and the bankruptcy court agreed)

5

that the statute of limitations on any claims against Ms. Halper had run. The bankruptcy court told Ms. Halper's counsel that she would have to show a good-faith basis for further assertion of the Fifth Amendment protections. The bankruptcy court continued the status conference, and the parties represented that Ms. Halper's deposition was scheduled for August 20, 2015.

The Lenders noticed Ms. Halper's deposition and propounded interrogatories, requests for admissions, and requests for production of documents. But shortly before her deposition, Ms. Halper retained new counsel and requested an extension of time to respond to the discovery requests. The parties stipulated to continue her deposition until September and then October. Ms. Halper, however, delayed in producing documents, so the parties agreed to continue her deposition until January 2016.

The parties continued the deposition again until March due to developments in the main bankruptcy case. However, shortly before the deposition, Mr. Cohen fell ill, so the parties agreed to another continuance.

Thereafter, the parties could not agree on a deposition date. At a status conference in April, the bankruptcy court ordered Ms. Halper's deposition to take place in May.

A week before the scheduled deposition, Ms. Halper's counsel informed the Lenders' counsel that Ms. Halper would not attend the deposition because she had to care for her father following eye surgery. The parties agreed to reschedule the deposition for June.

Two days prior to the June deposition, Ms. Halper's counsel stated that Ms. Halper would again not attend her deposition

6

because she underwent surgery and was unable to participate in "stressful activity" for at least two months. The Lenders agreed to continue the deposition to September. The stipulation for the continuance provided that the Lenders reserved their rights to seek sanctions against Ms. Halper for discovery abuses and refusal to sit for her deposition.

An hour before the scheduled start of Ms. Halper's deposition in September, her counsel e-mailed the Lenders' counsel, informing them that she would not appear. In the email, Ms. Halper's counsel wrote that, in a telephone conversation the preceding day, the Lenders' counsel had said that he intended to prove that Ms. Halper "stole" millions of dollars. Interpreting this as a threat of criminal prosecution (even though it was made by counsel for private parties, not a prosecutor), Ms. Halper's counsel claimed that she wanted additional criminal representation and would invoke her Fifth Amendment privilege against self-incrimination.

**D.    The Lenders' motion for an order to show cause**

The Lenders responded to this last-minute derailment of the deposition schedule with motions for an order to show cause why Ms. Halper should not be held in contempt for her repeated failure to sit for her deposition ("OSC Motion"). They requested terminating sanctions under Civil Rule 37 and argued that "there is no indication that the Defendant will ever appear for deposition . . . ." They contended that terminating sanctions were warranted under the Ninth Circuit's five-part test because: (1) the matter should have been resolved expeditiously but had dragged on for over five years; (2) Ms. Halper's tactics to

7

"delay, obstruct and obfuscate" had increased the time necessary for the court to manage its docket; (3) the Lenders had been prejudiced by their inability to go to trial and the legal costs arising from the delay; (4) public policy favoring disposition on the merits did not outweigh Ms. Halper's bad faith and willful conduct; and (5) lesser sanctions were not appropriate because they would not be effective in compelling Ms. Halper's cooperation, as shown by her disregard for the court's previous warnings.  In the alternative, the Lenders requested monetary sanctions but maintained that monetary sanctions alone would be insufficient to compel Ms. Halper's compliance.  They represented that they had incurred a combined total of over $87,000 in attorneys' fees and costs attempting to compel Ms. Halper's deposition.

Ms. Halper opposed the OSC Motion.  She argued that there were extenuating circumstances that caused her to decline to appear on the most recently scheduled deposition date – namely, her discovery that the Lenders would question her regarding "certain alleged transfers of money" that "would go beyond the issues that can be adjudicated within this adversary proceeding, and extend into criminal law issues to be used to pursue criminal liability against the Defendant."  She stated that she wanted to consult a criminal defense attorney and asked for a reasonable continuance.

The court granted the OSC Motion and issued an order to show cause ("OSC") why Ms. Halper should not be held in contempt for her failure to attend her deposition and "all the asserted bad faith delay tactics described in the Motion and failure to comply

8

with Court orders[.]"  In response to the OSC, Ms. Halper submitted a declaration in which her criminal defense counsel attested that, because "a claim was made by counsel for the moving party that he believes Ms. Halper was engaged in criminal wrong-doing," Ms. Halper had good cause to not appear for her deposition in order to protect her Fifth Amendment rights.

The bankruptcy court held a hearing on the OSC on December 6, 2016.  The bankruptcy court indicated that it disapproved of Ms. Halper's "abusive" conduct but was not quite ready to issue terminating sanctions.  Instead, it required Ms. Halper to pay monetary sanctions and to sit her for deposition on January 31, 2017.  The court thought that "substantial monetary sanctions are worthwhile."  Although the Lenders' counsel contended that the Lenders had incurred over $100,000 in attorneys' fees in connection with Ms. Halper's deposition, the court ordered Ms. Halper to pay the Lenders $40,000 in $10,000 increments.  The court told the parties to agree to a payment plan, but the parties were unable to do so. The Lenders' counsel wanted payments every two weeks and represented that Ms. Halper wanted to pay $10,000 on December 20 and January 13, with a final $20,000 payment on February 6. Ms. Halper then stated that she did not have the means to pay $40,000 and offered to pay $10,000 within 30 days.  Ms. Halper also informed the court that she would have to "figure this out" and "liquidate something."  The court considered the Lenders' desire to secure the money prior to the January 31 deposition and ordered payments on December 20, January 13, January 27, but extended the final payment to February 24 to afford Ms. Halper

9

additional time.

On December 19, the bankruptcy court entered its order finding Ms. Halper in contempt of court ("Contempt Order"). The court ordered monetary sanctions and ordered Ms. Halper to appear for her deposition. It additionally stated:

> If Debtor/Defendant fails to comply with any of the above terms of this Order, then the Plaintiff's counsel shall submit a Declaration attesting to the fact that the Debtor/Defendant failed to comply with a provision of this Order, and lodge an Order providing for entry of terminating sanctions (which will be issued by this Court against the Debtor/Defendant), which will include the Court striking the Debtor/Defendant's Answer in the above-captioned Adversary Proceeding and entering a Default Judgment against the Debtor/Defendant.

The bankruptcy court continued the hearing on the OSC to follow up on Ms. Halper's compliance.

Ms. Halper failed to comply with the Contempt Order. The Lenders' counsel filed a declaration that Ms. Halper did not make the second installment payment on January 13. On January 30, the court entered an order finding her in contempt and awarding sanctions. The court: (1) struck Ms. Halper's answer; (2) directed the clerk of court to enter default against Ms. Halper in the adversary proceedings under Civil Rule 55(a) and Rule 7055; and (3) stated that the Lenders are entitled to default judgment and directed them to file evidence in support of damages.

The bankruptcy court entered default against Ms. Halper on February 23, 2017.

**E.    The Lenders' Motion for Default Judgment**

The Lenders moved for default judgment ("Motion for Default Judgment"). They argued that, by virtue of the default, the

10

allegations in the adversary complaints were deemed admitted. They also offered declarations which they argued proved the elements of § 523(a)(2)(A): (1) Ms. Halper had made numerous false representations regarding the loans and the Mexico Investment to induce the Lenders to lend money; (2) Ms. Halper made the representations with an intent to deceive the Lenders; (3) Ms. Halper knew that the representations were false because she had no intention to pay back the loans from the sources she described and did not use any of the Flynt Litigation settlement to repay the loans or record any new mortgage as promised to Mr. Cohen; (4) the Lenders justifiably relied on Ms. Halper's representations because she held herself out as a licensed real estate professional and made numerous representations that she would repay them; and (5) the Lenders sustained damages.

The bankruptcy court held a hearing on the Motion for Default Judgment. Ms. Halper had not filed any written response to the motion but orally requested additional time to pay off the outstanding sanctions award. The court informed her that her efforts were "too little, too late."

On May 30, 2017, the bankruptcy court entered default judgment against Ms. Halper in the two adversary proceedings ("Default Judgment"). It awarded Mr. Cohen damages totaling $9,558,241.06. Similarly, it awarded Twin Palms damages totaling $2,385,950.29. It held that the awards were nondischargeable under § 523(a)(2)(A).

Ms. Halper timely appealed the Default Judgment.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C.

11

§§ 1334 and 157(b)(1) and (2)(I). We have jurisdiction under 28 U.S.C. § 158.

ISSUE

Whether the bankruptcy court erred in entering the Default Judgment against Ms. Halper.

STANDARD OF REVIEW

"A terminating sanction, whether default judgment against a defendant or dismissal of a plaintiff's action, is very severe. We review discovery sanctions for abuse of discretion." Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1096 (9th Cir. 2007) (citing Jorgensen v. Cassiday, 320 F.3d 906, 912 (9th Cir. 2003)); see Ferm v. U.S. Tr. (In re Crowe), 243 B.R. 43, 47 (9th Cir. BAP), aff'd, 246 F.3d 673 (9th Cir. 2000) ("We will uphold the granting of a default judgment unless there was an abuse of discretion.").

To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. United States v. Hinkson, 585 F.3d 1247, 1262-63 & n.21 (9th Cir. 2009) (en banc).

DISCUSSION

**A. The bankruptcy court did not err in granting the Default Judgment without an evidentiary hearing.**

Ms. Halper argues that the bankruptcy court erred when it granted Default Judgment, because the court should have held an

12

evidentiary hearing regarding her intent. We reject this argument for multiple reasons.

First, she never raised this issue before the bankruptcy court or requested an evidentiary hearing. We have stated that, "[o]rdinarily, federal appellate courts will not consider issues not properly raised in the trial courts. . . . An issue only is 'properly raised' if it is raised sufficiently to permit the trial court to rule upon it." Ezra v. Seror (In re Ezra), 537 B.R. 924, 932 (9th Cir. BAP 2015) (citations omitted); see Moldo v. Matsco, Inc. (In re Cybernetic Servs., Inc.), 252 F.3d 1039, 1045 n.3 (9th Cir. 2001) (stating that appellate court would not explore ramifications of argument because it was not raised in the bankruptcy court); Levesque v. Shapiro (In re Levesque), 473 B.R. 331, 335 (9th Cir. BAP 2012) ("Ordinarily, if an issue is not raised before the trial court, it will not be considered on appeal and will be deemed waived.").

Ms. Halper did not challenge the allegations or evidence concerning her fraudulent intent. Nor did she file a motion for reconsideration. Accordingly, she waived this issue on appeal.[3]

---

[3] We have discretion to "consider an issue raised for the first time on appeal if (1) there are exceptional circumstances why the issue was not raised in the trial court, (2) the new issue arises while the appeal is pending because of a change in the law, or (3) the issue presented is purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court." In re Ezra, 537 B.R. at 932-33 (quoting Franchise Tax Bd. v. Roberts (In re Roberts), 175 B.R. 339, 345 (9th Cir. BAP 1994)). Ms. Halper has not identified any exceptional circumstances excusing her failure to raise the issue of her intent below. She also does not identify any change in law, assert that the issue is purely one
(continued...)

13

Second, her argument is meritless. A default judgment specifically does away with the requirement of trial and is not akin to summary judgment. "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (citation omitted). The Lenders' complaints alleged all of the elements of a § 523(a)(2)(A) claim in detail. The bankruptcy court properly accepted as true the claims in the complaints.

Ms. Halper argues that a "trial is required for a Court to determine Appellant's intent" because "just like a Motion for Summary Judgment, the Court's function on a motion for default judgment is issue-finding, not issue resolution."

Ms. Halper is patently wrong. Default judgment is governed by Civil Rule 55; Civil Rule 56 is applicable only to summary judgment; and the standards under the two rules are completely different. When a party files a motion for summary judgment under Civil Rule 56, the responding party may argue that there is a dispute about the facts. But when a defendant is in default and the plaintiff seeks a default judgment under Civil Rule 55, the defendant has no right to challenge any of the facts properly alleged in the complaint. See Sharma v. Salcido (In re Sharma), BAP Nos. CC-12-1302-MkTaMo, CC-12-1520-MkTaMo, 2013 WL 1987351, at *8 (9th Cir. BAP May 14, 2013), aff'd, 607 F. App'x 713 (9th

---

[3](...continued)
of law, or discuss the prejudice that the Lenders may face. We will not consider it in the first instance.

14

Cir. 2015) ("Once [debtor] was in default, the only issue before the bankruptcy court was whether the well-pleaded factual allegations in the Complaint, deemed true, supported a claim under Section 523(a)(2)(A), and, if not, whether additional proof was necessary."). The Second Circuit case she cites in support of the conflation of these rules, United States v. One Tintoretto Painting Entitled "The Holy Family with Saint Catherine and Honored Donor", 691 F.2d 603 (2d Cir. 1982), plainly does not concern default judgment. Her contention that the court erred by not applying a summary judgment standard is frivolous.

She further argues that the bankruptcy court should have required the Lenders to prove up their claims. This argument is also frivolous. While the court has discretion to require further proceedings, the court need not do so. See Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978); In re Sharma, 2013 WL 1987351, at *8 ("So long as the bankruptcy court found sufficient evidence in the Complaint's allegations to support the determination of liability under Section 523(a)(2)(A), its decision survives. The bankruptcy court did not commit reversible error when it determined the issue of liability without a hearing."). The complaints, the Motion for Default Judgment, and the Lenders' declarations attached thereto adequately laid out the Lenders' claims and covered all of the elements of § 523(a)(2)(A). It was not an error to accept the allegations as true.[4]

---

[4] It is not clear that the bankruptcy court applied the test for a default judgment laid out in Eitel v. McCool, 782 F.2d (continued...)

15

**B.    Terminating sanctions were appropriate**.

Ms. Halper apparently thinks that terminating sanctions were unwarranted; some of her issues on appeal so state. But the body of her brief contains only a handful of sentences on that topic, and none of those sentences includes any citations to authority or the record. She does not even mention the governing rule (Civil Rule 37(b)(2), made applicable in bankruptcy by Rule 7037) or any of the Ninth Circuit decisions construing it. See, e.g., Conn. Gen. Life Ins. Co., 482 F.3d at 1096. Thus, she has not "specifically and distinctly raised and argued [these issues] in [her] opening brief." Hayes v. Idaho Corr. Ctr., 849 F.3d 1204, 1213 (9th Cir. 2017) (quoting Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F., 979 F.2d 721, 726 (9th Cir. 1992)). We may decline to address them. Id.

Even if she had properly raised these arguments, we would reject them. Contrary to her assertion, the bankruptcy court did consider a less severe sanction. The Lenders argued that the court should immediately strike her answer. Instead, the court gave Ms. Halper one more chance to sit for her deposition and ordered her to pay a portion of the Lenders' attorneys' fees caused by her prior abuses. The bankruptcy court acknowledged Ms. Halper's concerns by revising the proposed payment schedule. (The bankruptcy court was not required to accept her unsworn and uncorroborated statement that she could not afford to pay the monetary sanctions on the prescribed schedule.) The combination

---

[4](...continued)
1470, 1471–72 (9th Cir. 1986). But Ms. Halper did not raise this issue in the bankruptcy court and does not raise it on appeal.

16

of the monetary sanction and the order to sit for a deposition was a "less drastic sanction" that gave Ms. Halper a chance to avoid the terminating sanction. But when Ms. Halper failed to make the second installment payment, the "less drastic sanction" failed, and the court then imposed the terminating sanction that the Lenders requested in the OSC Motion and that the court threatened in the Contempt Order. We see no abuse of discretion.

Accordingly, the bankruptcy court did not err in awarding terminating sanctions.

## CONCLUSION

The bankruptcy court did not err in granting default judgment. We AFFIRM.