LOUISE CLARK, CONSERVATRIX (ESTATE OF WILBUR CLARK) *v.* COMMISSIONER OF INCOME MAINTENANCE (13468)

PETERS, C. J., HEALEY, SHEA, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued November 1—decision released December 20, 1988

*Hugh Barber,* assistant attorney general, with whom were *Martin Rosenfeld,* assistant attorney general, and, on the brief, *Joseph I. Lieberman,* attorney general, for the appellant (defendant).

*Timothy J. Johnston,* with whom was *Patricia A. Thompson,* for the appellee (plaintiff).

*Patty Jenkins Pittman* filed a brief for the Connecticut Women's Educational and Legal Fund, Inc., as amicus curiae.

*George B. Bickford* filed a brief for the Connecticut Probate Assembly as amicus curiae.

PETERS, C. J. The dispositive issue in this appeal is whether income "available" to an institutionalized incompetent for medicaid eligibility purposes includes an amount a Probate Court has ordered the incompetent to pay his at-home spouse. The plaintiff, Louise Clark, conservatrix for her husband Wilbur Clark, brought an adminstrative appeal pursuant to General Statutes § 17-2a[1] claiming that the defendant, the com-

---

[1] "[General Statutes] Sec. 17-2a. FAIR HEARINGS BY COMMISSIONER. APPLICATION. An aggrieved person authorized by law to request a fair hearing on a decision of the commissioner of income maintenance, or the conservator of any such person on his behalf, may make application for such hearing in writing over his signature to the commissioner and shall state in such application in simple language the reasons why he claims to be aggrieved. Such application shall be mailed to the commissioner within sixty days after the rendition of such decision. The commissioner shall thereupon hold a fair hearing within thirty days from receipt thereof and shall, at least ten days prior to the date of such hearing, mail a notice, giving the time and place thereof, to such aggrieved person. A reasonable period of continuance may be granted for good cause. No hearing shall be held after the decease of the aggrieved person. The aggrieved person shall appear personally at the hearing and may be represented by an attorney or other authorized representative. A stenographic or mechanical record shall be made of each hearing, but need not be transcribed except (1) in the event of an appeal from the decision of the hearing officer or (2) if a copy is requested by the aggrieved person, in either of which cases it shall be furnished by the commissioner of income maintenance without charge. The commissioner of income maintenance and any person authorized by him to conduct any hearing under the provisions of this section shall have power to administer oaths and take testimony under oath relative to the matter of the hearing and may subpoena witnesses and require the production of records, papers and documents pertinent to such hearing. No witness under subpoena authorized to be issued by the provisions of this section shall be excused from testifying or from producing records, papers or documents on the ground that such testimony or the production of such records or other documentary evidence would tend to incriminate him, but such evidence or the records or papers so produced shall not·be used in any criminal proceeding against him. If any person disobeys such process or, having appeared in obedience thereto, refuses to answer any pertinent question put to him by the commissioner or his authorized agent or to produce any records and

missioner of income maintenance, had awarded Wilbur Clark insufficient medicaid support by not excluding from his "available" income the amount that the Probate Court had ordered him to pay her in spousal support. The Fair Hearing Officer (FHO) upheld the defendant's ruling. The trial court, however, sustained the plaintiff's appeal holding that the defendant should have excluded the amount of the spousal support award from Wilbur Clark's "available" income. The defendant appealed to the Appellate Court and we transferred the case to ourselves pursuant to Practice Book § 4023. We find error.

The parties do not dispute the relevant facts. Wilbur Clark is an elderly, incompetent, nursing home resident for whom his wife, the plaintiff, serves as conservatrix. On May 29, 1984, the plaintiff, as spouse, applied to the Probate Court for a $340 per month allowance from her husband's estate. The plaintiff, as conservatrix, did not object to her own application and the Probate Court, on June 22, 1984, granted her a $460 per month allowance from the estate principal, an amount $120 more per month than she had requested.

---

papers pursuant thereto, the commissioner or his agent may apply to the superior court for the judicial district of Hartford-New Britain or for the judicial district wherein the person resides, or to any judge of said court if the same is not in session, setting forth such disobedience to process or refusal to answer, and said court or such judge shall cite such person to appear before said court or such judge to answer such question or to produce such records and papers and, upon his refusal to do so, shall commit such person to a community correctional center until he testifies, but not for a longer period than sixty days. Notwithstanding the serving of the term of such commitment by any person, the commissioner or his agent may proceed with such inquiry and examination as if the witness had not previously been called upon to testify. Officers who serve subpoenas issued by the commissioner or under his authority and witnesses attending hearings conducted by him hereunder shall receive like fees and compensation as officers and witnesses in the courts of this state to be paid on vouchers of the commissioner on order of the comptroller."

On October 4, 1984, the plaintiff, on her husband's behalf, applied to the defendant for Title XIX medicaid assistance, which the defendant granted effective retroactively to July 1, 1984. In determining the applicant's eligibility, the defendant found that he received $629.60 per month from social security and $698 per month from a Teamster's pension, for a monthly income of $1327.60, a figure that neither party disputes. See 42 U.S.C. § 1382a (a) (2) (B); 20 C.F.R. § 416.1121 (a). The defendant wrote to the plaintiff several times asking for her own asset information to determine whether any of Wilbur Clark's income should be diverted to her to meet her maintenance needs. See 42 C.F.R. § 435.832 (c). The plaintiff never responded, believing she had no such obligation as she had not applied for medicaid herself. The defendant therefore awarded benefits to Wilbur Clark based on $1327.60 per month of "available" income.

The plaintiff disputed the defendant's award to the incompetent and requested a fair hearing pursuant to General Statutes § 17-2a. The FHO upheld the defendant's award, also finding $1327.60 per month "available" to Wilbur Clark and ruling that the defendant need not consider the Probate Court award in determining his "available" income.[2]

The trial court then sustained the plaintiff's appeal from the FHO's decision. It held that no state statute or regulation mandated that the defendant, in calculating an applicant's "available" income, must disregard court orders requiring the applicant to pay sums to a third party and that the defendant had, therefore, acted illegally in calculating Wilbur Clark's "available"

[2] The FHO also concluded that the defendant had properly solicited income and resource information from the plaintiff to determine her eligibility for a spousal support diversion. He went on to rule that the defendant should allow the plaintiff a reasonable time to provide the information. The plaintiff refused.

income. The court remanded the case to the defendant to redetermine the applicant's eligibility. The defendant appeals from the trial court's judgment.

The federal medicaid program, established by Congress in 1965, "provid[es] federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." *Harris* v. *McRae*, 448 U.S. 297, 301, 100 S. Ct. 2671, 65 L. Ed. 2d 784, reh. denied, 448 U.S. 917, 101 S. Ct. 39, 65 L. Ed. 2d 1180 (1980); 42 U.S.C. § 1396 et seq. Although states participate voluntarily, a state electing to participate must develop a plan, approved by the secretary of health and human services, containing "reasonable standards . . . for determining eligibility for and the extent of medical assistance . . . ." 42 U.S.C. § 1396a (a) (17).[3] All participating states must provide coverage to "the categorically needy": dependent children, the aged, the blind and the disabled who qualify for welfare assistance under the Supplemental Security Income (SSI) program; 42 U.S.C. §§ 1381 through 1383; or, upon the election of the state, under a more restrictive standard in place before 1972. 42 U.S.C. § 1396a (f).[4] States are also afforded the option of cover-

[3] Title 42 of the United States Code, § 1396a (a) (17) provides in pertinent part: "A state plan for medical assistance must . . . (17) include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this subchapter, (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient and . . . as would not be disregarded (or set aside for future needs) in determining his eligibility for such aid, assistance, or benefits . . . . "

[4] Title 42 of the United States Code, § 1396a (f) provides: "EFFECTIVE DATE OF STATE PLAN AS DETERMINATIVE OF DUTY OF STATE TO PROVIDE MEDICAL ASSISTANCE TO AGED, BLIND, OR DISABLED INDIVIDUALS. Notwithstanding any other provision of this subchapter, except as provided in subsection (e) of this section, no State not eligible to participate in the State plan program established under subchapter XVI of this chapter shall be required to provide medical assistance to any aged, blind, or disabled individual (within the meaning of subchapter XVI of this chapter) for any

ing the "optionally categorically needy": individuals who are financially ineligible for SSI, but eligible for, or a recipient of, optional state supplementation to SSI. 42 U.S.C. § 1396a (a) (10) (A). Finally, states may also, at their option, provide assistance to the "medically needy": those whose resources are sufficient to cover

month unless such State would be (or would have been) required to provide medical assistance to such individual for such month had its plan for medical assistance approved under this subchapter and in effect on January 1, 1972, been in effect in such month, except that for this purpose any such individual shall be deemed eligible for medical assistance under such State plan if (in addition to meeting such other requirements as are or may be imposed under the State plan) the income of any such individual as determined in accordance with section 1396b (f) of this title (after deducting any supplemental security income payment and State supplementary payment made with respect to such individual, and incurred expenses for medical care as recognized under State law) is not in excess of the standard for medical assistance established under the State plan as in effect on January 1, 1972. In States which provide medical assistance to individuals pursuant to clause (10) (C) of subsection (a) of this section, an individual who is eligible for medical assistance by reason of the requirements of this section concerning the deduction of incurred medical expenses from income shall be considered an individual eligible for medical assistance under clause (10) (A) of that subsection if that individual is, or is eligible to be (1) an individual with respect to whom there is payable a State supplementary payment on the basis of which similarly situated individuals are eligible to receive medical assistance equal in amount, duration, and scope to that provided to individuals eligible under clause (10) (A), or (2) an eligible individual or eligible spouse, as defined in subchapter XVI of this chapter, with respect to whom supplemental security income benefits are payable; otherwise that individual shall be considered to be an individual eligible for medical assistance under clause (10) (C) of that subsection. In States which do not provide medical assistance to indviduals pursuant to clause (10) (C) of that subsection, an individual who is eligible for medical assistance by reason of the requirements of this section concerning the deduction of incurred medical expenses from income shall be considered an individual eligible for medical assistance under clause (10) (A) of that subsection."

Congress enacted this section, called the "209 (b) option," in order to encourage states to continue participating in the program. The option allows the states to retain their eligibility standards as of January 1, 1972, but disallows them from setting lower standards. Connecticut has elected the "209 (b) option." See *Gnutti* v. *Heintz,* 206 Conn. 628, 633, 539 A.2d 118 (1988).

their ordinary living expenses, but not their medical care. 42 U.S.C. § 1396a (a) (10) (C); 42 C.F.R. §§ 435.300 through 435.340.

Connecticut has elected to cover the "optionally categorically needy" and the "medically needy," as well as the "categorically needy." The plaintiff has applied for benefits on her husband's behalf under the "medically needy" option. Applicants qualify for assistance as "medically needy" if they incur medical expenses to an extent that reduces their income to the established eligibility level. These persons must first "spenddown" their "available" income on their medical care expenses to the eligibility level, with the medicaid program covering the unpaid balance. Thus, the lower the amount of income an applicant is deemed to have "available," the less he must "spenddown" to qualify for assistance. 42 C.F.R. § 435.301; see *Atkins* v. *Rivera,* 477 U.S. 154, 158, 106 S. Ct. 2456, 91 L. Ed. 2d 131 (1986).[5]

The legislature, by General Statutes § 17-134a,[6] has authorized the commissioner of income maintenance to administer Connecticut's medicaid program. Our statutes further provide that "[a]ll of the provisions of this chapter are extended to the medical assistance program except such provisions as are inconsistent with federal law and regulations governing Title XIX of the Social Security Amendments of 1965 and this part." General Statutes § 17-134e. "Thus, the legislature recognized the primacy of the applicable federal pro-

[5] On the "spenddown" mechanism, see *Schweiker* v. *Gray Panthers,* 453 U.S. 34, 39 n.5, 101 S. Ct. 2633, 69 L. Ed. 2d 460 (1981); 2 H. McCormick, Medicare and Medicaid Claims and Procedures (2d Ed. 1986) § 980, p. 454 n.1.

[6] General Statutes § 17-134a provides in pertinent part: "The commissioner of income maintenance is authorized to take advantage of the medical assistance programs provided in Title XIX, entitled 'Grants to States for Medical Assistance Programs,' contained in the Social Security Amendments of 1965 and may administer the same in accordance with the requirements provided therein . . . ."

visions and this court must be guided by those provisions. Stated in another way, the federal statutes and regulations set a limit upon the authority of the commissioner as well as furnishing a guide to his administration of the program." *Morgan* v. *White,* 168 Conn. 336, 343–44, 362 A.2d 505 (1975).

In determining an individual's eligibility for medicaid benefits, the commissioner may take "into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary [of health and human services], *available* to the applicant or recipient . . . . " (Emphasis added.) 42 U.S.C. § 1396a (a) (17) (B). The plaintiff contends that the Probate Court order for her to pay herself $460 of Wilbur Clark's monthly income compels the defendant to exclude that amount from Wilbur Clark's total income in determining his medicaid eligibility. She suggests that such an exclusion is required in order to give proper legal effect to a valid Probate Court order.

In our view, the plaintiff misconstrues the issue in this case. The Probate Court undoubtedly has the authority to enter an enforceable spousal support order. General Statutes § 45-75 (b).[7] This case, however, concerns whether the defendant must consider that court order in determining an applicant's eligibility for the federally funded medicaid program. We hold that he need not, indeed that he cannot.[8]

---

[7] General Statutes § 45-75 (b) provides: "Any conservator of the estate of a married person may apply such portion of the property of the ward to the support, maintenance and medical treatment of the ward's spouse which the court of probate, upon hearing after notice, decides to be proper under the circumstances of the case."

[8] We note that with the enactment of the Medicare Catastrophic Coverage Act of 1988, Pub. L. No. 100-360, H.R. 2470, § 303 (a), § 1924 (d) (5), effective October 1, 1989, in the event "a court has entered an order against an institutionalized spouse for monthly income for the support of the community spouse, the community spouse monthly income allowance for the spouse shall not be less than the amount of the monthly income so ordered." This change in the calculation of spousal benefits does not affect this case.

"Congress explicitly delegated to the Secretary broad authority to promulgate regulations defining eligibility requirements for Medicaid." *Schweiker* v. *Gray Panthers,* 453 U.S. 35, 43, 101 S. Ct. 2633, 69 L. Ed. 2d 460 (1981). "In view of this explicit delegation of substantive authority, the Secretary's definition of the term 'available' is 'entitled to more than mere deference or weight.' . . . Rather, the Secretary's definition is entitled to 'legislative effect' because, '[i]n a situation of this kind, Congress entrusts to the Secretary, rather than to the courts, the primary responsibility for interpreting the statutory term.' " Id., 44, quoting *Batterton* v. *Francis,* 432 U.S. 416, 425–26, 97 S. Ct. 2399, 53 L. Ed. 2d 448 (1977); see also *Herweg* v. *Ray,* 455 U.S. 265, 274–75, 102 S. Ct. 1059, 71 L. Ed. 2d 137 (1982); *Marcus' Appeal from Probate,* 199 Conn. 524, 532 n.3, 509 A.2d 1 (1986).

The Secretary's regulations require that an "agency *must* reduce its payment to an institution, for services provided to an individual . . . by the amount that remains after deducting the amounts specified in paragraph (c) of this section, from the individual's income." (Emphasis added.) 42 C.F.R. § 435.832 (a). Paragraph (c) specifically lists only four amounts an agency may deduct from a "medically needy" applicant's total income: (1) a personal needs allowance; (2) an at-home spousal allowance; (3) an at-home family allowance; and (4) medical or remedial expenses not paid by third parties. 42 C.F.R. § 435.832 (c);[9] see *Mattingly by*

---

[9] Title 42 of the Code of Federal Regulations, § 435.832 (c) provides: "The agency must deduct the following amounts, in the following order, from the individual's total income including amounts disregarded in determining eligibility:

(1) A personal needs allowance that is reasonable in amount for clothing and other personal needs of the individual while in the institution. This protected personal needs allowance must be at least—

(i) $25 a month for an aged, blind, or disabled individual, including a child applying for Medicaid on the basis of blindness or disability;

*Mattingly* v. *Heckler,* 784 F.2d 258, 266 (7th Cir. 1986);
*Florence Nightingale Nursing Home* v. *Perales,* 782
F.2d 26, 29 (2d Cir. 1986), cert. denied, 479 U.S. 815,

   (ii) $50 a month for an institutionalized couple if both spouses are aged, blind, or disabled and their income is considered available to each other in determining eligibility; and

   (iii) For other individuals, a reasonable amount set by the agency, based on a reasonable difference in their personal needs from those of the aged, blind, and disabled.

   (2) For an individual with only a spouse at home, an additional amount for the maintenance needs of the spouse. This amount must be based on a reasonable assessment of need but must not exceed the highest of—

   (i) The amount of the income standard used to determine eligibility for SSI for an individual living in his own home;

   (ii) The amount of the highest income standard, in the appropriate category of age, blindness, or disability, used to determine eligibility for an optional State supplement for an individual in his own home, if the agency provides Medicaid to optional State supplement recipients under § 435.230; or

   (iii) The amount of the highest medically needy income standards for one person established under § 435.814.

   (3) For an individual with a family at home, an additional amount for the maintenance needs of the family. This amount must—

   (i) Be based on a reasonable assessment of their financial need;

   (ii) Be adjusted for the number of family members living in the home; and

   (iii) Not exceed the highest of the following need standards for a family of the same size:

   (A) The standard used to determine eligibility under the State's approved AFDC plan.

   (B) The standards used to determine eligibility under the State's Medicaid plan, as provided for in § 435.814.

   (4) Amounts for incurred expenses for medical or remedial care that are not subject to payment by a third party, including—

   (i) Medicare and other health insurance premiums, deductibles, or coinsurance charges; and

   (ii) Necessary medical or remedial care recognized under State law but not covered under the State's Medicaid plan, subject to reasonable limits the agency may establish on amounts of these expenses.

   (d) In determining the amount of the individual's income to be used to reduce the agency's payment to the institution, the agency may, for single individuals, deduct an amount (in addition to the personal needs allowance) for maintenance of the individual's home if—

   (1) The amount is deducted for not more than a 6-month period; and

   (2) A physician has certified that the individual is likely to return to his home within that period."

107 S. Ct. 68, 93 L. Ed. 2d 26 (1986).[10] The regulations

[10] The *Mattingly* case concerned 42 C.F.R. § 435.733, and the *Perales* case 42 C.F.R. §§ 435.725 and 435.832. The three sections are nearly identical.

Title 42 of the Code of Federal Regulations, § 435.733 provides: "POST-ELIGIBILITY TREATMENT OF INCOME AND RESOURCES OF INSTITUTIONAL-IZED INDIVIDUALS: APPLICATION OF PATIENT INCOME TO THE COST OF CARE.

(a) The agency must reduce its payment to an institution, for services provided to an individual specified in paragraph (b) of this section, by the amount that remains after deducting the amounts specified in paragraph (c) of this section, from the individual's income.

(b) This section applies to the following individuals in medical institutions and intermediate care facilities:

(1) Individuals receiving cash assistance under AFDC who are eligible for Medicaid under § 435.110 and individuals eligible under § 435.121.

(2) Individuals who would be eligible for AFDC, SSI, or an optional State supplement except for their institutional status and who are eligible for Medicaid under § 435.211.

(3) Aged, blind and disabled individuals who are eligible for Medicaid, under § 435.231, under a higher income standard than the standard used in determining eligibility for SSI or optional State supplements.

(c) The agency must deduct the following amounts, in the following order, from the individual's total income including amounts disregarded in determining eligibility:

(1) A personal needs allowance that is reasonable in amount for clothing and other personal needs of the individual while in the institution. This protected personal needs allowance must be at least—

(i) $25 a month for an aged, blind, or disabled individual, including a child applying for Medicaid on the basis of blindness or disability;

(ii) $50 a month for an institutionalized couple if both spouses are aged, blind, or disabled and their income is considered available to each other in determining eligibility; and

(iii) For other individuals, a reasonable amount set by the agency, based on a reasonable difference in their personal needs from those of the aged, blind, and disabled.

(2) For an individual with only a spouse at home, an additional amount for the maintenance needs of the spouse. This amount must be based on a reasonable assessment of need but must not exceed the higher of—

(i) The more restrictive income standard established under § 435.121; or

(ii) The medically needy standard for an individual;

(3) For an individual with a family at home, an additional amount for the maintenance needs of the family. This amount must—

(i) Be based on a reasonable assessment of their financial need;

(ii) Be adjusted for the number of family members living in the home; and

(iii) Not exceed the higher of the need standard for a family of the same size used to determine eligibility under the State's AFDC plan or the med-

ically needy income standard established under subpart I of this part for a family of the same size.

(4) Amounts for incurred expenses for medical or remedial care that are not subject to payment by a third party, including—

(i) Medicare and other health insurance premiums, deductibles, or coinsurance charges; and

(ii) Necessary medical or remedial care recognized under State law but not covered under the State's Medicaid plan, subject to reasonable limits the agency may establish on amounts of these expenses.

(d) In determining the amount of the individual's income to be used to reduce the agency's payment to the institution, the agency may, for single individuals, deduct an amount (in addition to the personal needs allowance) for maintenance of the individual's home if—

(1) The amount is deducted for not more than a 6-month period; and

(2) A physician has certified that the individual is likely to return to his home within that period."

Title 42 of the Code of Federal Regulations, § 435.725 provides: "POST-ELIGIBILITY TREATMENT OF INCOME AND RESOURCES OF INSTITUTIONAL-IZED INDIVIDUALS: APPLICATION OF PATIENT INCOME TO THE COST OF CARE.

(a) The agency must reduce its payment to an institution, for services provided to an individual specified in paragraph (b) of this section, by the amount that remains after deducting the amounts specified in paragraph (c) of this section, from the individual's income.

(b) This section applies to the following individuals in medical institutions and intermediate care facilities:

(1) Individuals receiving cash assistance under SSI or AFDC who are eligible for Medicaid under § 435.110 or § 435.120.

(2) Individuals who would be eligible for AFDC, SSI, or an optional State supplement except for their institutional status and who are elgible for Medicaid under § 435.211.

(3) Aged, blind, and disabled individuals who are eligible for Medicaid, under § 435.231, under a higher income standard than the standard used in determining eligibility for SSI or optional State supplements.

(c) In reducing its payment to the institution, the agency must deduct the following amounts in the following order, from the individual's total income including amounts disregarded in determining eligibility:

(1) A personal needs allowance that is reasonable in amount for clothing and other personal needs of the individual while in the institution. This protected personal needs allowance must be at least—

(i) $25 a month for an aged, blind, or disabled individual, including a child applying for Medicaid on the basis of blindness or disability;

(ii) $50 a month for an institutionalized couple if both spouses are aged, blind, or disabled and their income is considered available to each other in determining eligibility; and

other diversions to meet either an applicant's legal or moral obligations.[11]

(iii) For other individuals, a reasonable amount set by the agency, based on a reasonable difference in their personal needs from those of the aged, blind, and disabled.

(2) For an individual with only a spouse at home, an additional amount for the maintenance needs of the spouse. This amount must be based on a reasonable assessment of need but must not exceed the highest of—

(i) The amount of the income standard used to determine eligibility for SSI for an individual living in his own home, if the agency provides Medicaid only to individuals receiving SSI;

(ii) The amount of the highest income standard, in the appropriate category of age, blindness, or disability, used to determine eligibility for an optional State supplement for an individual in his own home, if the agency provides Medicaid to optional State supplement recipients under § 435.230; or

(iii) The amount of the medically needy income standard for one person established under § 435.812, if the agency provides Medicaid under the medically needy coverage option.

(3) For an individual with a family at home, an additional amount for the maintenance needs of the family. This amount must—

(i) Be based on a reasonable assessment of their financial need;

(ii) Be adjusted for the number of family members living in the home; and

(iii) Not exceed the higher of the need standard for a family of the same size used to determine eligibility under the State's AFDC plan or the medically needy income standard established under Subpart I of this part for a family of the same size.

(4) Amounts for incurred expenses for medical or remedial care that are not subject to payment by a third party, including—

(i) Medicare and other health insurance premiums, deductibles, or coinsurance charges; and

(ii) Necessary medical or remedial care recognized under State law but not covered under the State's Medicaid plan, subject to reasonable limits the agency may establish on amounts of these expenses.

(d) In determining the amount of the individual's income to be used to reduce the agency's payment to the institution, the agency may, for single individuals, deduct an amount (in addition to the personal needs allowance) for maintenance of the individual's home if—

(1) The amount is deducted for not more than a 6-month period; and

(2) A physician has certified that the individual is likely to return to his home within that period."

Compare footnote 9, supra; see Missouri State Division of Family Services v. Barclay, 705 S.W.2d 518, 522 n.3 (Mo. App. 1985) ("[i]t is only an academic exercise . . . to distinguish the applicability of each of these regulations as they contain identical provisions").

[11] The plaintiff cites Marcus' Appeal from Probate, 199 Conn. 524, 509 A.2d 1 (1986), and Zeoli v. Commissioner of Social Services, 179 Conn. 83,

The plaintiff submits that although the court ordered award does not fall within any of the § 435.832 (c) exclusions, the amount is not "available" because the order obligates the applicant to pay it to a third party.[12] The defendant argues, to the contrary, that "available" income equals "total income," regardless of an applicant's obligations to pay sums out, and that any protected amounts are then diverted pursuant to § 435.832 (c). We agree with the defendant. The principle of availability[13] "has served primarily to prevent the States from conjuring fictional sources of income and resources by imputing financial support from persons who have no obligation to furnish it or by overvaluing assets in a manner that attributes nonexistent resources to recipients." *Heckler* v. *Turner,* 470 U.S.

425 A.2d 553 (1979), for the proposition that the defendant may give effect to a Probate Court order. She notes that the defendant is apparently inconsistent in adopting some Probate Court orders and rejecting others. In *Marcus' Appeal from Probate* the department of income maintenance sought to rely on a Probate Court order disallowing certain gifts made by the conservatrices for a medicaid applicant. We agreed with the department that the amount of the gifts, because they had been disallowed, were "available" to the applicant. In *Zeoli* we interpreted the terms of a spendthrift trust to exclude certain assets from being "available" for medicaid eligibility purposes. The issue in this case is different, however, because no Probate Court order can supersede federal law, which requires that an "agency *must* reduce its payment to an institution" to a certain level. (Emphasis added.) 42 C.F.R. § 435.832 (a).

[12] The plaintiff and an amicus also argue that even if court ordered support does not fall within a 42 C.F.R. § 435.832 (c) exclusion, nothing prevents a state from excluding more from the plaintiff's income than the federal law allows. Nothing before us indicates that the state has chosen to do so and, further, given the mandate of § 435.832 (a), we doubt whether the state has an option to broaden permissible exclusions from an applicant's income.

[13] This court and others, in addressing "available" income, have referred to the concept of "actual" availability. See, e.g., *Heckler* v. *Turner,* 470 U.S. 184, 200, 105 S. Ct. 1138, 84 L. Ed. 2d 138 (1985); *Marcus' Appeal from Probate,* 199 Conn. 524, 532–33, 509 A.2d 1 (1986); *Zeoli* v. *Commissioner of Social Services,* 179 Conn. 83, 94, 425 A.2d 553 (1979). The word "actual" does not appear in the statute, however, and therefore is not entitled to independent weight.

184, 200, 105 S. Ct. 1138, 84 L. Ed. 2d 138 (1985) (holding that mandatory tax withholdings are "available" for social security purposes); see also *Wilczynski* v. *Harder,* 323 F. Sup. 509, 517 (D. Conn. 1971) (the cash value, not the face value, of an insurance policy is "available" for SSI). Thus, just as under SSI an agency includes, as "available," amounts garnished from an applicant's wages or withheld for other obligations; see 20 C.F.R. § 416.1123 (b) (2);[14] so the concept of "available" income excludes imputed income that an applicant has not actually received, but does not require a state to exclude the amount of an applicant's other obligations. Under SSI the individual's needs come first, followed by those of his dependents and creditors. See 20 C.F.R. § 404.2040. Because the secretary's regulations, to which courts must accord " 'legislative effect' "; *Schweiker* v. *Gray Panthers,* supra, 44; already provide for an agency determined spousal support exclusion, but do not provide for court ordered exclusions, the defendant correctly calculated Wilbur Clark's "available" monthly income as $1327.60, and the trial court erred in directing the defendant to exclude $460 per month from his "available" income.

The Georgia Court of Appeals, in *Johnson* v. *Flanagan,* 179 Ga. App. 708, 347 S.E.2d 643, cert. granted, 354 S.E.2d 156 (1986),[15] reached a similar conclusion with regard to court awarded alimony. In that case a court had ordered a medicaid applicant, whose sole income was a social security check, to pay alimony to

[14] Title 20 of the Code of Federal Regulations, § 416.1123 (b) (2) provides: "Amount considered as income. We may include more or less of your unearned income than you actually receive. . . . (2) We also include more than you actually receive if amounts are withheld from unearned income because of a garnishment or to make certain payments such as payment of your Medicare premiums."

[15] On June 19, 1987, the Georgia Supreme Court dismissed the *Johnson* case without published opinion or order.

his ex-wife. In determining his "available" income, the state medicaid agency did not deduct his alimony obligation from his total income. On appeal the court upheld the agency's construction of the statute, holding that it could only deduct the items listed in the federal regulations, here 42 C.F.R. § 435.725 (c). Id., 710.[16]

The policy underlying today's decision reflects the legislative concern that the medicaid program would be at fiscal risk if applicants were permitted to divert income in ways not sanctioned by law. Our recent Title XIX cases have recognized the importance of this policy; *Harrison* v. *Commissioner,* 204 Conn. 672, 529 A.2d 188 (1987) (assets from a transfer made in order to qualify for medicaid are "available" to the transferor); *Marcus' Appeal from Probate,* supra (unauthorized gifts by a conservator of an estate are "available" to the ward); and the present case illustrates the reasonableness of the legislative restrictions on "available" income. Federal regulations provide for an exclusion from "available" income for at-home spousal support "based on a reasonable assessment of need but *must not exceed* the highest of" three standards. (Emphasis added.) 42 C.F.R. § 435.832 (c) (2).[17] The defendant rep-

---

[16] The plaintiff relies heavily on the case of *Deptartment of Health Services* v. *Secretary of Health & Human Services,* 823 F.2d 323 (9th Cir. 1987). Indeed, the defendant admits that this is the only case decided contrary to his position, but submits that the court decided the case erroneously. Without passing on whether the Ninth Circuit Court of Appeals correctly decided the case, we note that it is distinguishable.

In that case, the state of California submitted to the secretary a plan, California Plan Amendment 84-24, that proposed to treat court-ordered spousal and child support payments as "unavailable" to a medicaid recipient. Id., 326. The secretary disapproved the plan but the Court of Appeals reversed, holding that the secretary's position, that the court-ordered funds were "available," was arbitrary, capricious and an abuse of discretion. Nowhere in the case, however, did the Court of Appeals refer to 42 C.F.R. § 435.832, the regulation upon which we decide this case. Apparently either the secretary did not raise the issue, or the court did not consider it. In any case, we are convinced that 42 C.F.R. § 435.832 controls.

[17] See footnote 9, supra.

resents, and the plaintiff has not disputed, that Connecticut has adopted the most generous of the three standards. 42 C.F.R. § 435.832 (c) (2) (iii). That exclusion is, nonetheless, limited because "Congress chose to direct those limited funds to persons who were most impoverished . . . ." *Schweiker* v. *Hogan*, 457 U.S. 569, 590, 102 S. Ct. 2597, 73 L. Ed. 2d 227 (1982). Because the plaintiff elected not to provide relevant income information, the defendant was unable to determine the extent, as limited by federal law, to which he could exclude an amount for spousal support from Wilbur Clark's "available" income.[18]

"We are not without sympathy for those with minimal resources for medical care. But our 'sympathy is an insufficient basis for approving a recovery' based on a theory inconsistent with law." *Schweiker* v. *Gray Panthers*, supra, 48–49, quoting *Potomac Electric Power Co.* v. *Director, OWCP*, 449 U.S. 268, 284, 101 S. Ct. 509, 66 L. Ed. 2d 446 (1980). A reviewing court "may not ignore federal regulations simply because it interprets § 1902 (a) (17) [of the Social Security Act] in a manner it considers preferable to the Secretary's interpretation." *Herweg* v. *Ray*, supra, 277. Our appellate review in this case is limited to determining

[18] The defendant represents that he was perfectly willing to allow a spousal support exclusion, but that $460 per month was more than he would, indeed could, allow under federal law. The plaintiff has not argued to the contrary.

The plaintiff does argue that the defendant could have intervened as an interested party, pursuant to General Statutes § 45-75 (c), to protect its interests. At the time of the proceedings, however, the defendant had no reason to intervene as Wilbur Clark had not yet applied for medicaid. Arguably the defendant could have moved to modify the probate court order if, after Wilbur Clark applied for medicaid, he thought the probate court's support order too high. Yet, by such a modification the defendant could not retrieve the amount he had paid out in the interim. Further we question the need to force the defendant to collaterally attack such court orders, especially when the defendant has his own federally mandated mechanism for determining at-home spousal support. 42 C.F.R. § 435.832 (c) (2); see footnote 17, supra.

whether the defendant correctly applied the regulations promulgated by the secretary. We hold that the defendant accurately employed the governing federal standards in computing the applicant's "available" income.

There is error, the judgment is vacated and the case is remanded with direction to dismiss the plaintiff's appeal.

In this opinion the other justices concurred.