[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an administrative appeal under UAPA C.G.S. 4-166, et seq. CT Page 3048
Plaintiff is the son of an incompetent person appealing the decision of a Fair Hearing Officer designated by the Commissioner of Income Maintenance under C.G.S. 17-2a. The question at issue is whether the sum of $800.00 per month which is paid as alimony under a Superior Court decree can lawfully be deducted from his father's income for Title XIX purposes.
Plaintiff's parents were married in 1947. In 1983 his father was diagnosed as having Alzheimer's disease which he still has and for which, with other infirmities of mind and body, he has been institutionalized.
In November, 1989, his wife instituted dissolution of marriage proceedings in Superior Court. In December, 1989, plaintiff was appointed conservator by the probate court and appeared as conservator for his father. The court dissolved the marriage and adjudged a separation agreement between the parties as "fair and equitable" and incorporated it by reference in the judgment. (C.G.S. 46b-66.) It provided "as alimony" for $9,600.00 a year to be paid by the incompetent defendant at the rate of $800.00 a month. The decree also provided that neither party can modify the terms of the agreement, and the amount of alimony, including its duration, shall not be modifiable. It also provided that the parties had previously divided their assets in a mutually satisfactory manner and the defendant incompetent had irrevocable assigned to his wife a 60% interest in his Exxon pension plan. A qualified domestic relations order (QDRO) was executed and ordered by the court on July 9, 1991.
The separation agreement was dated January 20, 1990 and on February 20, 1990, plaintiff as conservator for his father, Patricia Berlin, guardian ad litem for the plaintiff, and Elinor Heck signed a separation agreement awarding a monthly alimony payment of $800.00 and a 60% interest in plaintiff's Exxon pension plan to Elinor Heck. The Exxon pension is a monthly annuity that plaintiff received in the sum of $1,192.33, sixty per cent of which is $715.40. This provision gave Elinor Heck a monthly payment of $1,515.40 out of a total of plaintiff's monthly income of $1,900.00, which consisted of $798.60 gross social security income and $1,192.33 gross Exxon pension. This agreement, heavily weighted in the wife's favor, was incorporated by the court in its QDRO on the representation by plaintiff's representative that he expected plaintiff's medical needs to be taken care of by the State under the medical assistance program. The court reserved jurisdiction to approve and modify the QDRO issued on July 9, 1990.
On May 17, 1990, plaintiff, through his son and conservator, applied to the Department for medical assistance when he was a patient at the VA hospital in West Haven where he CT Page 3049 had resided since December 14, 1989. The Department denied the application partly because plaintiff's income for the first six months of the coverage period exceeded the allowable income limit and partly because plaintiff's assets after the first six months exceeded the allowable asset limit. Plaintiff through his conservator then requested a fair hearing claiming the Department was treating income as available to him when it was not available to him. The hearing was ultimately held, after being rescheduled at plaintiff's request, on January 9, 1991. The Department calculated post-eligibility deductions by refusing to allow the $800.00 monthly alimony plaintiff paid to the defendant under the QDRO because the amount was available to the plaintiff who had directly received the $800.00 and no deduction of such payment was provided for in the Uniform Policy Manual (UPM). On October 12, 1990, plaintiff received a retroactive VA check for $8,118.00 and was granted a monthly VA benefit of $902.00.
On December 14, 1989, plaintiff was admitted to a VA hospital with pneumonia and was not expected to survive his illness. In early 1990 his health improved and the hospital declared he needed custodial care. On June 22, 1990, he was placed in a long-term care facility and the VA paid for three months of his care there. Meantime, plaintiff's son and conservator was paying to his mother Elinor Heck $800.00 monthly alimony pursuant to the QDRO and decree under a threat of prosecution for contempt of court by plaintiff's attorney.
Plaintiff's attorney contended that (a) income diverted to meet the needs of a non-member of the assistance unit, viz., the plaintiff's ex-spouse, and (b) the excluded income claimed was court ordered and (c) the income was inaccessible to plaintiff because of the court order, and on each of these grounds the income was not available to pay for his debt to the convalescent facility.
The Fair Hearing Officer (FHO) found the dates and sequence of events as set forth above. He also found (a) that plaintiff suffers from Alzheimer's disease:(b) the income received directly by plaintiff is subject to post-eligibility deductions for residents of long-term care facilities under UPM 5035.20, (c) the $800.00 alimony payment to plaintiff's ex-spouse cannot be deducted from the unearned income received by the plaintiff as part of his post-eligibility deductions as neither departmental policy nor federal regulation allows for consideration of alimony payments as deductible expense.
 II
The scope of the Court's review is very limited under CT Page 30504-183 (i) and (j). Facts cannot be retried and credibility of witnesses is in the province of the administrative agency. Under UPM 5005(A), "available income" is considered available if it is (1) received directly by the assistance unit or (2) received by someone else on behalf of the assistance unit and the unit fails to prove it is inaccessible or (3) deemed by the Department to benefit the assistance unit. The FHO found plaintiff's income consisted of direct Social Security benefits, VA benefits and pension benefits from an annuity plan.
UPM 5015.10 specifies what specific types of income are excludable income for applicants for medical assistance under the MAABD program. Nowhere are Social Security, VA or pension payments mentioned.
Also under UPM 5035.20, an exhaustive list of allowable monthly deductions does not include alimony payments made by plaintiff for his medical assistance in a long-term care facility. Under this section the assistance recipient must contribute a portion of his income toward the cost of his care.
C.G.S. 17-134 (a) and (e) provide that the UPM on the Connecticut Assistance Program must be promulgated in strict compliance with Federal statutes and regulations governing states' participation in the federal Medicaid program. Thus the Connecticut legislature recognized the primacy of the federal law. Clark v. Commissioner of Income Maintenance, 209 Conn. 390,396, 397. It is therefore futile for plaintiff to argue that federal law does not apply. See 42 U.S.C. § 1396 (a)(17)(B).
Plaintiff cites Department of Health Services v. Secretary of Health Human Services, 823 F.2d 323, [823 F.2d 323], (9th Circ.) and Emerson v. Wynia, 754 F. Sup. 705 (D.C.Mn.) to support his interpretation but Clark, though urged to follow these federal citations, declined to do, though they were brought to the Court's attention. Instead it ruled that42 C.F.R. § 435.832 was controlling. See Clark at 405, n. 16.).42 C.F.R. § 435.832 (c) specifically lists only the following four amounts that any agency may deduct from a needy applicant's total income: (1) a personal needs allowance: (2) an at home spousal allowance: (3) an at home family allowance: and (4) medical and remedial expenses not paid by third parties. No deduction is permitted for alimony payments to an ex-spouse. Therefore a court order for an ex-spouse's alimony cannot be deducted. Clark, at 397.
Clark, footnote 8, p. 397, points out the Medicare Catastrophic Coverage Act (MCCA) of 1988, codified at 42 U.S.C. § 1396r-5, was enacted to comprehensively treat the income of institutionalized spouses, effective October 1, 1989. MCCA allowed community property states to apply their community CT Page 3051 property laws in determining income and assets of institutional spouses. It established a uniform national method for counting income and liberalized pre-existing law regarding deductions from the institutionalized spouse's income for the support of a community spouse. In determining the income of an institutionalized spouse or community spouse for purposes of post-eligibility determination, if payment of income is made solely in the name of the institutionalized spouse or the community spouse, "the income shall be considered available only to that respective spouse." See 42 U.S.C. § 1396r-5 (b)(2)(A)(1). Support obligations toward a community spouse are not considered. (Moreover, in the instant case, plaintiff is not married (because of the decree of dissolution) and does not fall within the definition of an "institutionalized spouse," nor does his ex-wife fall within the definition of a "community spouse.") As Clark, supra, states at 405, "the legislative concern (is) that the medicaid program would be at fiscal risk if applicants were permitted to divert income in ways not sanctioned by law." Unfortunately, sympathy for those with minimal resources for medical care is an insufficient basis for approving a recovery based on a theory inconsistent with law. See Clark, supra, 406.
 III
The FHO's omission to explain why plaintiff's alimony obligation was not inaccessible under UPM 5005(B) is not a valid ground of appeal because that regulation applies to inaccessible income and an alimony obligation is an expense rather than income. As such expense it must qualify for deductibility under UPM 5035.20. The FHO found that it did not.
In response to plaintiff's contention that the Court should "look to the realities of the situation," the defendant replies that the reality of the situation discloses a plaintiff's son and conservator entering into a lopsided separation agreement that ignored his father's medical needs. He then persuaded the Court to adopt that agreement on the assertion and assumption that his father's medical needs would be taken care of by the State without ascertaining first the Medicaid law regarding eligibility. It may be because of the misapprehension of what such law contained that plaintiff may be able to seek some adjustment of the amount of alimony support ordered under the dissolution decree, but such an adjustment cannot be achieved in this litigation through an interpretation of federal and state law.
The Court must therefore and does hereby dismiss this appeal.
THE COURT CT Page 3052
BY GEORGE A. SADEN STATE TRIAL REFEREE