[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action involves an appeal from a decision of the Defendant State of Connecticut, Department of Social Services (hereinafter "D.S.S.") denying the Plaintiff's Application for Title XIX Medicaid benefits.
General Statutes § 17b-2 (9) designates D.S.S. as the state administrator of the Medicaid program under Title XIX of the Social Security Act as Amended, 42 U.S.C. § 1396 et seq. "The federal Medicaid program, established by Congress in 1965, `provid[es] federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons.'" Harris v. McRae, 448 U.S. 297, 301,100 S.Ct. 2671, 65 L.Ed.2d 784, reh. denied; 448 U.S. 917,101 S.Ct. 39 65 L.Ed.2d 1180 (1980); 42 U.S.C. § 1396 et seq. Although states participate voluntarily, a state electing to participate must develop a plan, approved by the secretary of health and human services, containing "reasonable standards . . . for determining eligibility for and the extent of medical assistance. . . ." 42 U.S.C. § 1396
(a)(17). Clark v. Commissioner, 209 Conn. 390, 394
(1988).
General Statutes § 17b-261 addresses medical eligibility: "17b-261(a) Medical assistance shall be provided for any otherwise eligible person . . . and if such person is an institutionalized individual . . . and has not made an assignment or transfer or other disposition of property for less than fair market value for the purpose of establishing eligibility for benefits or assistance under this section."
The Plaintiff was denied benefits on the basis of a transfer of assets for less than fair market value. CT Page 198
Regulations make it clear that the transfer by an applicant's spouse of assets without receipt of fair market value within 30 months, will also be considered a disqualifying transfer. U.P.M. § 3027.05(A). Assets of the applicant's spouse may be considered available "deemed assets." U.P.M. 4000.01 and 4025.65(A)(1).
Our courts have noted regarding Medicaid that "Congress chose to direct those limited funds to persons who were most impoverished. . . ." Schweiker v. Hogan, 457 U.S. 569, 590,102 S.Ct. 2597, 73 L.Ed.2d 227 (1982). Also see, Clark v.Commissioner, 209 Conn. 390 (1988) where the Supreme Court upheld the D.S.S.'s narrow construction of a federal Medicaid regulation and noted:
 The policy underlying today's decision reflects the legislative concern that the Medicaid program would be at fiscal risk if applicants were permitted to divert income in ways not sanctioned by law.
209 Conn. at 405.
The facts found by the fair hearing officer are not substantially in dispute.
 1. On March 11, 1993, the appellant's spouse, who was diagnosed as having prostate cancer, established a revocable trust with himself as beneficiary. (Exhibit 1.)
 2. The Trust was for his sole benefit. (Exhibit B)
 3. In April 1993, the appellant began to receive adult day care services at Jefferson House. (Exhibits 1. and 1. F)
 4. On June 3, 1993, the appellant's spouse died. (Exhibit 1.)
 5. The Appellant's Will, left his estate which included the Trust to the trustee's in accordance with the terms of the Trust. (Exhibit 1, C) CT Page 199
 6. The provisions of the Trust and the Will excluded the appellant from receiving any benefits from either instrument. (Hearing Record)
 7. The gross Succession Tax Assessment on the appellant's spouse's estate was $466,642.80. (Exhibit 2)
 8. The appellant and her spouse's total assets would have been considered to determine eligibility. (Hearing Record)
 8. The appellant entered Fenwood Manor on October 8, 1993 and was discharged on May 4, 1994. (Exhibit 2)
 9. On February 9, 1994 the appellant applied for Title 19 benefits. (Exhibit A)
 10. The appellant is presently a resident of Riverside Health Center. (Exhibit 2)
 11. A transfer of assets in the amount of all of the couples assets occurred within the 30 month look back period established by policy. (Hearing Record)
 12. The appellant's period of ineligibility began June 1993 and extends for thirty months. (Hearing Record)
(R. Findings of Fact 1-12.)
The hearing upheld the denial concluding:
 The Appellant's spouse established a revokable trust in March 1993. The assets at the time of the inception of the trust and for Title XIX eligibility purposes, would not be divided, but rather totaled against such assistance limits.
 Upon the death of the spouse all of the assets due the assistance unit were transferred without the receipt of fair value. CT Page 200
(R. p. 5.)
Appellant briefs the following claims on the merits. "III The Department's decision is contrary to law because the disinheritance of a spouse does not constitute a transfer of assets. 1. The devise of Mr. Bezzini's property is not within the definition of a `Transfer of Assets.' 2. The Application of the transfer of asset rules to testamentary dispositions would disqualify a significant amount of medical applicants, contrary to the intent of the law. B. The Department's decision was arbitrary and capricious because it ignored all factors relating to the intent of Mr. Bezzini's estate planning arrangement.[1]
In support of the claim that the transfer of $466,642.80 in deemed assets from her spouse to her heirs is not a transfer of assets; Plaintiff's counsel characterizes the transfer as a devise under a will. The Record establishes that the assets did not transfer by will but by means of the trust. The will merely indicated in Article IV that the residuary estate goes to the trustees of the trust to be distributed in accordance with the terms of the trust. The trust provides that upon the death of the Grantor (the applicant's spouse) the trust estate is divided between their two sons. That the assets pass by the trust rather than the will was the intention as evidenced by the attorney's letter to D.S.S. (P. pp. 57-59). The plan was to avoid Probate Court fees, expenses and administration. The transfer of assets by Trust avoided these problems. It also resulted in the conclusion that the $466,642.80 passed by a transfer of assets to a trust.
Plaintiff also cites U.P.M. § 3027.17 and 3027.30 to dispute the "transfer of assets" finding. These sections dealing with determination of whether fair market value was received are not directed to this issue. The claim that the applicant's spouse could not have intended to receive fair market value when he died is irrelevant. In the typical scenario where one tries to convey property to heirs in order to impoverish oneself for Medicaid purposes, it clearly is not the intent of the transferor which controls.
Plaintiff is correct that had her spouse disinherited her by will, that would not have been a "transfer of assets" which would have disqualified her.[2]
CT Page 201
Plaintiff's reliance on U.P.M. 3027.15 is misplaced. This section addresses "transfers made exclusively for reasons other than qualifying." The fair hearing officer was not bound to accept the characterization of the Plaintiff spouse's intent
 The substantial evidence rule governs judicial review of administrative fact finding under General Statutes § 4-183 . . . An administrative finding is supported by substantial evidence' if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred . . Such a standard of review allows less room for judicial scrutiny than does the `weight of the evidence' rule or the `clearly erroneous' rule . . . In determining whether an administrative finding is supported by `substantive evidence,' a court must defer to the agency's right to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part. (Citations omitted and internal quotations omitted.)
Briggs v. State Employees Retirement Commission,210 Conn. 214, 217 (1989).
"If the administrative record provides substantial evidence upon which the hearing officer could reasonably have based his findings . . . the decision must be upheld."Conn. Building Wrecking Co. v. Carrothers, 218 Conn. 580,601 (1991).
There was no explanation of the attempted disinheritance of Plaintiff or her refusal to assert her legal right to a share of the estate. The fair hearing officer could conclude by the results that at least part of the intent was to qualify Plaintiff for Medicaid.
In construing the Medicaid statutes and regulations we are further aided by clear policy guidance in Forsyth v.Rowe, 226 Conn. 818, 828-29 (1993):
 The Plaintiff's narrow reading of the words `established by an individual' discloses an CT Page 202 ambiguity in the language of § 1396a(k) as applied to the facts of this case. It would be anomalous to construe the statute to allow a Medicaid applicant to accomplish through a conservator or guardian acting on his behalf what the law prevents the applicant from doing on his own.
 Our conclusion reflects the legislative concept that the Medicaid program not be used as an estate planning tool. The Medicaid program would be at fiscal risk if individuals were permitted to preserve assets for their heirs while receiving medical benefits from the state. Congress enacted the medical qualifying trust provisions as an addition to the provisions designed to assure that individuals receiving nursing home and other long-term care services under Medicaid are in fact poor and have not transferred assets that should be used to purchase the needed services before Medicaid benefits are made available. H.R. No. 99-265, 99th Cong., 1st Sess. 71 (1985).
Here, we have estate planning, preservation of assets for heirs and the transference of assets in an effort to gain medical benefits from the state. Contrary to Plaintiff's assertion that anything goes as long as it is not specifically prohibited, this policy requires close scrutiny of a result which accomplishes the proscribed goal.
The policy articulated repeatedly and as recently as 1993, is surely as applicable today with the Medicaid system now operating at an unsustainable deficit.
The Appeal is dismissed.
Robert F. McWeeny, J.