[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff is a recipient of Title XIX Medicaid benefits who suffers from mental retardation, cerebral palsy and speech dysarthria. His speech is very difficult to understand. He is seeking Medicaid funding for a Dynavox[1] communication device and related accessories. The defendant Commissioner of the Department of Social Services (DSS) is authorized by statute, General Statutes § 17b-260, et seq., to administer the Medicaid program in Connecticut.[2] DSS denied plaintiff's request for the Dynavox Communication Device. Following a hearing held pursuant to §§ 17b-60 and §§ 4-176e to 4-184, DSS issued CT Page 3484 a decision dated July 30, 1997, upholding the denial of the Dynavox to the plaintiff.
This administrative appeal was filed on September 8, 1997, by plaintiff's guardian to challenge the July 30, 1997 decision. The appeal is brought pursuant to the Uniform Administrative Procedures Act (UAPA), §§ 4-166, et seq. The plaintiff is aggrieved by the DSS decision for purposes of the UAPA. For the reasons set forth below, the appeal is dismissed.
The scope of the issues in this case are impacted by other litigation involving these parties that is now pending in federal court. On November 26, 1996, Wolan intervened as a party plaintiff in the federal class action lawsuit entitled, Desariov. Thomas, No. 396 CV 0064A (JBA) (D.Conn. filed 4/96), that challenges the DSS Medical Services Policy Manual (MSP). The MSP limits medical coverage for durable medical equipment to those items specifically listed in the fee schedule. On January 7, 1997, a statewide class was certified and on January 10, 1997, a preliminary injunction issued enjoining DSS from limiting Medicaid coverage for durable medical equipment to items on the exclusive list of covered items. Desario v. Thomas, 963 F. Sup. 120,124 (1997). DSS was ordered to reconsider plaintiff's claim, which had previously been denied because the Dynavox was not on the exclusive list, to determine if the items requested, the Dynavox met the definition of durable medical equipment and was medically necessary.
DSS stipulated on February 10, 1997, that Wolan could intervene in Desario and receive the benefit of the preliminary injunctive relief. Also, DSS stipulated to the court's consideration of whether the requested items were durable medical equipment and/or covered under the additional Medicaid coverage categories of prosthetic device, MSP Manual § 190, or speech related services, MSP Manual § 176.
The Second Circuit Court of Appeals reversed and vacated the preliminary injunction in Desario on February 24, 1998, holding that: "We agree that Connecticut's use of a list of covered equipment is permissible." Desario v. Thomas, slip op., #97-6027 #289, p. 25 (2nd Cir. February 24, 1998). Also, see the 1974 Medical Assistance Manual distributed by the federal Department of Health and Human Services (HHS) to the state agencies administering the Medicaid program: CT Page 3485
Question 5
 May the State limit medical supplies and equipment?
Answer
 Yes. States may place a money ceiling upon medical supplies and equipment . . . or may list those items for which it will reimburse.
HCFA Medical Assistance Manual, § 5.50.1-00 (February 16, 1977).
This remains the position of HHS as evidenced by its brief inDesario at p. 7: "To define covered items or services, a specific list of covered items and services would be consistent with the requirements of federal law." (ROR p. 59.)
Our Supreme Court has also recognized the limitations of the Medicaid program which preclude Plaintiff's durable medical equipment claim.[3] In Alexander v. Choate, 469 U.S. 287, 303
(1985), the court held:
 Medicaid programs do not guarantee that each recipient will receive that level of health care precisely tailored to his or her particular needs. Instead, the benefit provided through Medicaid is a particular package of health care services.
The lack of universal coverage of the Medicaid program is clear from the regulations and legislative history. The Social Security Amendments of 1965, Pub.L. No. 89-97, § 1903(e),79 Stat. 286, 350, established as a goal for scope of care services "a view toward furnishing by July 1, 1975, comprehensive care and services to substantially all individuals who meet the plan's eligibility standards. . . ." This provision was repealed in 1972. Pub.L. No. 92-603, § 230, 86 Stat. 1329, 1410. The elimination of this goal was based on a recognition of the financial burden of Medicaid on the states. H.R. Rep. No. 92-231 at 3, reprinted in 1972 U.S.C.C.A.N. 4989, 5086. The regulation,42 C.F.R. § 440.230(d) 1996, specifically recognizes that the state agency "may place appropriate limits on a service. . . ." Also, see42 C.F.R. § 440.230(b) (1996). In Beal v. Doe, 432 U.S. 438
(1977), the court recognized that Medicaid does not require the CT Page 3486 funding of every medical need and that the statutes confer "broad discretion on the States to adopt standards for determining the extent of medical assistance, requiring only that such standards be reasonable and consistent with the objectives of the Act." (Internal quotation marks omitted.) Id., 444.
In Desario the Second Circuit held "That means that an individual with a rare condition or unusual needs, who must have a costly item of [durable medical equipment] that Connecticut has not chosen to cover and that is needed by a handful of the Medicaid population, will have to look for other sources of assistance." DeSario v. Thomas, slip op., 38.
DSS concluded that the Dynavox was not medical equipment. This conclusion is specifically supported by the State Medicaid Manual § 4385.B and the Secretary of Health and Human Services who noted as to Wolan's Dynavox request:
 While the Secretary has not issued a federal definition of medical equipment for Medicaid purposes, the Secretary has stated that, fundamentally, any Medicaid item or service, must be involved in "direct patient care" and be "for the express purpose of diagnosing, treating, or preventing . . . illness, injury or other impairments to an individual's physical or mental health."
(ROR p. 16.)
The conclusion that the Dynavox is not medical equipment is reasonable, and supported by substantial and essentially undisputed evidence in the record. The Dynavox does not diagnose, treat or prevent Wolan's conditions. It is an alternative communication system. In that he has other means of communication, it does not prevent the recurring esophageal stenosis condition.
In a Medicaid appeal it was noted: "We are not without sympathy for those with minimal resources for medical care. But our sympathy is an insufficient basis for a recovery based on a theory inconsistent with the law. A reviewing court may not ignore federal regulations simply because it interprets [the Social Security Act] in manner it considers preferable to the Secretary's interpretation." (Internal quotation marks and CT Page 3487 citations omitted.) Clark v. Commissioner, 209 Conn. 390, 406
(1988). Our Supreme Court in Clark quoted another Medicaid appeal: "Thus, the legislature recognized the primacy of the applicable federal provisions and this court must be guided by those provisions. Stated in another way, the federal statutes and regulations set a limit upon the authority of the commissioner as well as furnishing a guide to his administration of the program.Morgan v. White, 168 Conn. 336, 343-44 (1975)." Clark v.Commissioner, supra, 209 Conn. 396.
The plaintiff's claim that the Dynavox is a prosthetic also fails based on the regulatory definition in 42 C.F.R. § 440.120(c), "prosthetic device" means "replacement, corrective or supporting devices prescribed by a physician or other licenced practitioner of the healing arts . . . to:
 (1) Artificially replace a missing portion of the body;
 (2) Prevent or correct physical deformity or malfunction; or
 (3) Support a weak or deformed portion of the body."
The Dynavox is an alternate form of communication, it does not meet the definition of prosthesis. The plaintiff is not missing his vocal cords, they are damaged. His vocal cords are not corrected, replaced or supported by the Dynavox.
The Dynavox is also outside the regulatory definition of speech pathology services, 42 C.F.R. § 440.10(c), which is limited to "diagnostic, screening, preventive or corrective services. . . ." Supplies and equipment may be included in such services which accomplish the "diagnostic, screening, preventative or corrective" function. The requested equipment does not diagnose, screen for or prevent the plaintiff's cerebral palsy or speech dysarthria. It also does not correct his conditions. It functions as an alternative means of communication.
It may very well be that the plaintiff's life would substantially improve with the Dynavox communication device, but that is not sufficient to authorize this court to command the state to allocate its limited Medicaid resources. CT Page 3488
The appeal is dismissed
Robert F. McWeeny, J.