**DEPARTMENT OF HEALTH SERVIC-ES OF ·the STATE OF CALIFORNIA, Petitioner,**

**Susan Reed, on her own behalf and as conservator of her husband Robert Reed, Petitioner-Intervenor,**

**Dudley Reese, Petitioner-Intervenor,**

v.

**SECRETARY OF HEALTH & HUMAN SERVICES, Respondent.**

No. 86–7709.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 10, 1987.

Decided July 28, 1987.
Amended Sept. 1, 1987.

John J. Klee, Jr., San Francisco, Cal., for petitioner.

Evelyn R. Frank, Oakland, Cal., for petitioners-intervenors.

Joseph Stein, San Francisco, Cal., for respondent.

Before GOODWIN, BEEZER and THOMPSON, Circuit Judges.

BEEZER, Circuit Judge:

The State of California (the State) appeals from the decision of the Secretary of HHS (the Secretary) rejecting the State's proposed Medicaid plan amendments. The State seeks permission to use California community property law to determine the Medicaid eligibility of persons institutionalized in nursing homes. The State also seeks authorization from the Secretary to disregard in the eligibility determination income that is used by a Medicaid recipient to pay child support or alimony. We conclude that recent circuit precedent controls the outcome of this case and we reverse.

## I

## BACKGROUND

### A. *The Medicaid Statute*

Medicaid, enacted in 1965 as Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq., is a cooperative federal-state endeavor designed to provide health care to needy individuals. *Atkins v. Rivera,* 477 U.S. 154, 106 S.Ct. 2456, 2458, 91 L.Ed.2d 131 (1986); *Harris v. McRae,* 448 U.S. 297, 308, 100 S.Ct. 2671, 2683, 65 L.Ed.2d 784 (1980). A state is not required to participate in Medicaid, but once it chooses to do so, it must create a plan that conforms to the requirements of the Medicaid statute and the federal Medicaid regulations. *Washington v. Bowen,* 815 F.2d 549, 552 (9th Cir.1987).

Participating States must provide Medicaid coverage to the "categorically needy." The categorically needy are those persons eligible for cash assistance under the SSI program, 42 U.S.C. § 1381, et seq., or the AFDC program, 42 U.S.C. § 601 et seq. *Atkins v. Rivera,* 106 S.Ct. at 2458. SSI and AFDC are designed to provide financial assistance for basic necessities, but not medical expenses. Accordingly, Congress has directed participating States to supply Medicaid coverage to these "especially deserving" persons, who would otherwise be unable to meet their medical expenses. *Schweiker v. Gray Panthers,* 453 U.S. 34, 37, 101 S.Ct. 2633, 2637, 69 L.Ed.2d 460 (1981).

A State also may elect to provide Medicaid benefits to the "medically needy." The medically needy satisfy the nonfinancial eligibility requirements for SSI or AFDC but their income exceeds the maximum levels permitted under those programs. *Atkins v. Rivera,* 106 S.Ct. at 2459. The medically needy qualify for benefits under Medicaid only after they incur expenses that reduce their income to the eligibility level. Thus, the medically needy must "spenddown" their income to the level where their income matches the income

of individuals eligible for SSI or AFDC. *Id.*

To determine if an individual is entitled to Medicaid benefits, a State may consider only the income and resources "available" to the applicant. 42 U.S.C. § 1396a(a)(17). The calculations become problematic when an applicant is married. For instance, when an applicant and his spouse live in the same household, the spouse's income and resources are deemed available to the applicant for purposes of determining the applicant's eligibility. 42 C.F.R. § 435.-723(b). If the applicant enters a nursing home, the "deeming" of the spouse's income continues for one month. After one month, the spouse's income is disregarded in the eligibility determination. 42 C.F.R. § 435.723(c)(1)(i).

One issue in this case is how much income should be considered available to the married Medicaid recipient who has been institutionalized in a nursing home for over a month, after "deeming" has ceased. Income that is attributed to the Medicaid recipient must be "spentdown" before he or she is eligible for Medicaid benefits. The remaining income may be used by the noninstitutionalized spouse for his or her basic necessities.

### B. *California Plan Amendment 85–5*

California plan amendment 85–5 proposes to use California community property law to determine how much income is available to each spouse after one spouse has been institutionalized in a nursing home for over a month. In a separate plan amendment, 84–24, California proposes to consider income that a medically needy person uses to pay spousal or child support as unavailable to that person for purposes of determining his or her eligibility.[1]

The Secretary rejected plan amendment 85–5 as contrary to the Act and its accompanying regulations. According to the Secretary, 42 U.S.C. § 1396a(a)(10)(C)(i)(III) requires States to apply SSI methodologies in Medicaid eligibility determinations. The

---

1. The State subsequently submitted plan amendment 85–8, which consolidated plan amendments 85–5 and 84–24. Other plan amendments addressing the same issues submitted by the State also were rejected by the Secretary.

Secretary also contends that 42 U.S.C. 1396a(a)(17)(B), which requires that States consider only income that is "available" to a Medicaid applicant, precludes States from employing community property law principles.

If the State is barred from using its community property law, it will be required to use the "name-on-the-check rule" in its eligibility determinations. Under the name-on-the-check rule, a Medicaid applicant's eligibility is based on the amount of income that the applicant receives each month in his or her name. This rule has no explicit statutory or regulatory basis. *Washington v. Bowen,* 815 F.2d 549, 554 (9th Cir.1987). In contrast, under California community property law the amount of income that each spouse receives in his or her name is generally irrelevant. Instead, each spouse in the marital community has a one-half ownership interest in property of the community. Cal.Civ.Code §§ 5105 and 5110.

Because most elderly couples receive the greater part of their community income in the husband's name, *see Washington v. Bowen,* 815 F.2d at 552, the name-on-the-check rule often imposes great hardships on women whose husbands have entered a nursing home. Consider a couple that receives $1,500 in income per month; $1,000 per month in the husband's name and $500 per month in the wife's name. If the husband enters a nursing home, his Medicaid eligibility will be based on the $1,000 he receives in his name. His wife will have a usable income of only $500 per month. If, on the other hand, the wife enters a nursing home, her eligibility is based on the $500 she receives and her husband has the full use of the $1,000 he receives in his name.

California Plan Amendment 85–5 attempts to eliminate the inequities inherent in this method of determining eligibility. Under the California plan, the woman whose husband enters a nursing home will have $750 to spend on basic necessities.

### C. *California Plan Amendment 84–24*

The Secretary also disapproved the State's proposal to treat court-ordered spousal and child support payments as "unavailable" to the Medicaid recipient for purposes of determining his or her eligibility. The Secretary contends that despite the existence of a valid court order the income used to make the payments is nevertheless available to the payor. Thus, the Secretary asserts that a Medicaid recipient must contribute income, earmarked for alimony or child support, to the cost of his medical care rather than allowing the court-ordered payments to be subtracted first for the child or spouse. The State asserts that this income is unavailable to Medicaid recipients and may not be included in the eligibility determination.

## II

### STANDARD OF REVIEW

We will set aside the Secretary's decision if it was arbitrary, capricious, an abuse of discretion or not in accordance with the law. *Washington v. Bowen,* 815 F.2d at 553. The Secretary's interpretation of the Act and its regulations is entitled to deference. *Id.* However, we will not defer to the Secretary's interpretation if it conflicts with the Medicaid statute. *Id.* at 554. Finally, the State's interpretation is also entitled to some deference. *Id.* The Medicaid statute expressly vests States with authority to devise their own reasonable standards for determining eligibility. *See* 42 U.S.C. § 1396a(a)(17). We will, therefore, "accord some deference to the State's interpretation in this context." *Washington v. Bowen,* 815 F.2d at 554.

## III

### ANALYSIS

### A. *California Plan Amendment 85–5*

In *Washington v. Bowen,* 815 F.2d 549 (9th Cir.1987), we reversed the Secretary's disapproval of a plan amendment submitted by the State of Washington.

Washington's plan is virtually identical to the plan submitted by the State. In fact, the Secretary conceded at oral argument that *Washington v. Bowen* is the controlling law in this circuit concerning the legality of plan amendment 85–5. Accordingly, for the reasons stated in *Washington v. Bowen*, we reverse the Secretary's decision rejecting plan amendment 85–5.

### B. *California Plan Amendment 84–24*

 The Secretary's contends that Medicaid procedures for calculating available income must mirror those set forth in the SSI Act and its regulations. The Secretary notes that the SSI statute and its regulations do not provide an express income exclusion for child or spousal support. Accordingly, the Secretary concludes that a similar exclusion is not permitted under the Medicaid statute. We find flaws in each step of the Secretary's analysis. Moreover, we conclude that *Whaley v. Schweiker,* 663 F.2d 871 (9th Cir.1981), is dispositive on this issue and it requires that we reverse the Secretary's decision rejecting plan amendment 84–24.

The Secretary's major premise is that the "same methodology" provision of the Medicaid statute requires states to follow federal SSI regulations. *See* 42 U.S.C. § 1396a(a)(10)(C)(i)(III).[2] The Secretary argues that SSI eligibility standards are nationally uniform and, by virtue of the "same methodology" provision, the requirement of national uniformity is incorporated into the Medicaid statute. We rejected this interpretation of section 1396a(a)(10)(C)(i)(I-II) in *Washington v. Bowen* where we held that the provision "cannot reasonably be construed to require the entire Medicaid

program, a cooperative federal-state venture, to match the uniformity standards of the 'comparable' but purely federal, SSI program." 815 F.2d at 555.

The Supreme Court has also concluded that the Secretary's current interpretation of the "same methodology" provision is erroneous. In *Atkins v. Rivera,* 477 U.S. 154, 106 S.Ct. 2456, 91 L.Ed.2d 131 (1986), the Court traced the history of § 1396a(a)-(10)(c)(i)(III) and held, "the 'same methodology' requirement simply instructs states to treat components of income—e.g. interest or court ordered support payments—similarly for both medically and categorically needy persons." *Atkins v. Rivera,* 106 S.Ct. at 2462. The Court observed that Congress enacted the "same methodology" requirement to invalidate regulations promulgated by the Secretary in 1981 that allowed states to use different income and resource criteria when determining the eligibility of medically and categorically needy persons. *Id.* at 2462–63 & n. 10. Thus, the Medicaid statute now directs states to use the same methodology for determining the eligibility of the medically and categorically needy.[3] It does not require that states, in formulating their Medicaid eligibility standards, rely on SSI methodologies exclusively. In any case, the SSI statute and its regulations offer no guidance because they "do not expressly define the terms 'income' and 'available'", the key terms upon which this case turns. *Washington v. Bowen,* 815 F.2d at 555.

Even if we agreed with the Secretary that the Act instructs states to follow SSI eligibility requirements, we could not accept the Secretary's second premise: that the absence of an express income exclusion

---

**2.** 42 U.S.C. § 1396a(a)(10)(C)(i)(III) provides:
A State plan for medical assistance must provide
(C) that if medical assistance is included for any group of individuals described in section 1396d(a) of this title who are not described in subparagraph (A), then—
(III) *the single standard to be employed in determining income and resource eligibility for all such groups,* and the methodology to be employed in determining such eligibility, *which shall be the same methodology which would be employed under the supplemental security income program in the case of groups*

*consisting of aged, blind, or disabled individuals* in a State in which such program is in effect, and which shall be the same methodology which would be employed under the appropriate State plan (described in subparagraph (A)(i)) to which such group is most closely categorically related in the case of other groups. (Emphasis added.)

**3.** There is no evidence that the State proposes to adopt different standards for determining the eligibility of medically and categorically needy persons.

for child or spousal support in the SSI statute precludes a state from creating an exclusion in Medicaid. In *Grunfeder v. Heckler*, 748 F.2d 503 (9th Cir.1984), the Secretary argued that only those items specifically listed as income exclusions in 42 U.S.C. § 1382a(b) may be disregarded when determining SSI eligibility. We disagreed and concluded that the list of income exclusions enumerated in section 1382a(b) was not exclusive. Accordingly, we held that German reparations paid to survivors of the Holocaust were not countable as available income despite the absence of an express exclusion in section 1382a(b). *Grunfeder*, 748 F.2d at 508. Thus, an income exclusion may exist in SSI and, congruously, Medicaid even though Congress has not explicitly provided for an exclusion in either the SSI or Medicaid statutes.

We also conclude that our holding in *Whaley v. Schweiker*, 663 F.2d 871 (9th Cir.1981), requires the reversal of the Secretary's decision. In *Whaley* we held that pension benefits paid to a disabled veteran for the support of his minor children under the Veterans' Act should not be deemed available to the veteran for the purpose of determining his SSI eligibility. *Whaley*, 663 F.2d at 874. The Secretary argued that the dependents' portion of the veteran's pension should be included as available income because the veteran received the dependent's share in one unapportioned check, which he was free to spend as he pleased. We rejected the Secretary's claim that the mode of payment conclusively determined the availability of income. *Id.* Instead, we noted that "the Veterans' Act children's benefits of $51.11 were clearly intended by Congress to be used for the children" and we held that the income earmarked for the dependents could not be used to reduce the veteran's entitlement to cash assistance. *Id.* Similarly, income that a Medicaid recipient uses to pay court-ordered child support or alimony cannot be

used to reduce the recipient's Medicaid benefits.[4]

Finally, we observe that the SSI statute and its regulations, which the Secretary relies on at length, undermine rather than support the Secretary's position. A person who receives alimony or child support may in many cases also receive cash assistance under SSI or AFDC. When such a person applies for cash assistance, federal law requires that child support and alimony be treated as the unearned income of the *recipient* of the support payment. *See* 42 U.S.C. § 1328a(a)(2)(E); 20 C.F.R. § 416.-1121(b). Curiously, the Secretary asserts that the income should be treated as also available to the payor. Thus, the Secretary seeks to count the income twice. Clearly, the income is available to only one person, either the payor or the payee. Congress has determined that the income should be attributed to the payee. The Secretary has not advised us why we should ignore relevant federal law and we refuse to do so.

## C. *Attorneys Fees*

■ Intervenors seek attorneys fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. The EAJA provides for awards of fees and expenses to parties prevailing against the United States, unless the government's position was substantially justified. "The standard to be applied in determining whether the government's position was substantially justified is one of 'reasonableness.'" *Rawlings v. Heckler*, 725 F.2d 1192, 1196 (9th Cir.1984). An adverse decision on the merits does not bar a finding of reasonableness. *Wolverton v. Heckler*, 726 F.2d 580, 583 (9th Cir.1984).

This case presented novel and difficult issues. Many of the issues in this case were decided on the basis of our holding in *Washington v. Bowen*. However, the Secretary did not have access to our decision in *Washington v. Bowen* until after he had

---

**4.** In *Whaley* the Secretary contended that the dependents' share of Whaley's check should be considered available to Whaley because he could not be compelled to spend the income on behalf of his children. 663 F.2d at 873. Unlike the situation in *Whaley*, a court has several

sanctions it may impose if a person defaults on support payments. *See* Cal.Civ.Code §§ 4701, 4702, 4801.6, 4801.7; *see also* Cal.Code of Civ. Pro. §§ 1209, 1218. Thus, an even stronger argument can be made that income earmarked for support payments is truly unavailable.

already submitted his brief in this case. Accordingly, although we hold that the Secretary's decision must be reversed, we conclude that the Secretary's position was substantially justified. *Cf. Zarr v. Barlow,* 800 F.2d 1484, 1493 (9th Cir.1986) (Attorneys fees inappropriate under EAJA even though BIA regulation concerning eligibility for Indian higher education grant exceeded authority conferred by Congress). The intervenor's request for fees is, therefore, denied.

REVERSED.

