555 So.2d 408 (1989)
Mary K. CRIDER, Administratrix of the Estate of William Jones, Deceased,[1] Appellant,
v.
STATE of Florida, DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Office of Public Assistance Appeal Hearings, Appellees.
No. 88-970.
District Court of Appeal of Florida, First District.
December 12, 1989.
Rehearing Denied February 6, 1990.
Robert J. Shapiro of Bay Area Legal Services, Inc., Tampa, for appellant.
Jack Emory Farley, HRS Dist. Legal Office, Tampa, for appellees.
SMITH, Judge.
Before us is an appeal from an order of a client appeal hearing officer concerning eligibility for medical assistance.[2] We affirm.
In the order appealed, the hearing officer approved the department's denial of William J. Jones' eligibility for Institutional Care Program (ICP) benefits under Florida's state-administered, federally-assisted Medicaid program. The sole issue for our review is the hearing officer's determination that the department was not compelled, in calculating Jones' monthly income for eligibility purposes, to exclude the sum of $336.00 Jones had been ordered to pay as support for his wife under a temporary court order.
No testimony was presented below. Instead, counsel for the parties presented certain oral stipulations, from which the hearing officer found the following facts *409 not in dispute. At the time of his application on September 1, 1987, for ICP benefits, William J. Jones was an 82-year-old man living in the Community Convalescent Center in Plant City. He had a total monthly income of $1,032.90.[3] That amount of income exceeded the federal Medicaid cap of $1,020.00, and the Florida State Income Standard for Medicaid Eligibility of $881.00 in effect at the time of the application. Further, by order dated September 16, 1987, Jones was ordered to pay the sum of $336.00 per month to his wife, Verna Louise Jones, for support. This order grew out of a proceeding for separate maintenance, unaccompanied by a petition for divorce. Also before the hearing officer by stipulation were documents introduced as exhibits consisting of HRS's Medicaid Eligibility Notice of Application Disposition; a memorandum from appellees' appellate counsel (as Senior Attorney) to HRS General Counsel; a memorandum to the Senior Attorney from the Assistant General Counsel; a copy of the circuit court temporary support order; and a copy of three checks evidencing payment of sums designated as support for Verna L. Jones.
Under subchapter XIX of the Social Security Act, 42 U.S.C. § 1396, et seq., Congress established a cooperative federal-state program to provide medical assistance to persons in need. A state may participate, or not, but if it chooses to do so it must adopt a plan, to be approved by the Secretary of Health and Human Services of the United States, conforming to the requirements of the federal statutes and regulations prescribed by the secretary. 42 U.S.C. § 1396. Florida, as a participating state, has designated HRS as the state agency responsible for the administration of Medicaid funds under subchapter XIX and has authorized the department to provide payment for medical services to persons determined by the department or its agents to be eligible. § 409.266(1)(a), Florida Statutes (1987).
The department, under section 409.266(15), is required to adopt rules necessary to implement the Medicaid program. See, Chapter 10C-7, 10C-8, Florida Administrative Code. Rules 10C-7, 10C-8.014 and 10C-8.018 prescribe coverage groups and eligibility requirements for the department's ICP program.[4] Institutionalized aged, blind or disabled persons eligible (except for level of income and assets) for benefits under Title XVI of the Social Security Act may receive Medicaid assistance provided his or her income does not exceed 300% of the current Title XVI federal benefits rate, Rule 10C-8.014, and does not exceed the established state income standard, Rule 10C-8.020, Florida Administrative Code.
At the time of the application in question, three times the federal benefit rate amounted to $1,020.00, and the state income standard was set at $881.00 monthly income. As noted above, Jones' income exceeded both standards, and he would be clearly ineligible unless his income is viewed as reduced by the amount of the court-ordered spouse support.
No contention is made here that Florida's Medicaid plan deviates from or fails to conform in any respect to express provisions of the federal statutes or the regulations prescribed by the Secretary. In addition, it is conceded that the pertinent federal or state regulations do not expressly mention the treatment of sums paid for spouse support under a court order in calculating income eligibility. Nevertheless, appellant urges that the combined effect of federal and state statutes, regulations, and case law requires that in determining income for Medicaid eligibility purposes, the department is compelled to defer to the orders of a circuit court purporting to require the *410 applicant to pay a portion of his income for spouse support.
Appellants' three points on appeal are summarized and restated for the purposes of discussion. First, appellant argues that the $336.00 monthly amount Jones was required to pay under the court order was not "available" to him as income, and therefore could not be considered by the department in determining income for eligibility purposes. Appellant here relies on language found in 42 U.S.C. § 1396a(a), setting forth requirements for a state plan for medical assistance, viz:
(a) Contents
A State plan for medical assistance must 
* * * * * *
17... . include reasonable standards ... for determining eligibility for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this subchapter, (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicable or recipient... .
42 U.S.C. § 1396a(a)(17)(A) and (B) (emphasis added).
As appellant concedes, there is no federal statute or regulation which defines the term "available." Nevertheless, appellant notes that SSI financial eligibility regulations must be used to determine Medicaid eligibility under 42 C.F.R. § 435.721, and the regulation at 20 C.F.R. § 416.1102 states, in part: "Income is anything you receive in cash or in kind that you can use to meet your needs for food, clothing, or shelter... ." There follows, in section 416.1103, a list of some items which are not to be considered as income. Appellant again concedes that court-ordered support payments are not included in the list of exclusions, but maintains, nevertheless, that the list of exclusions is "not exclusive."
Appellant's second point, although separately stated, is more properly viewed as an argument in support of or supplementary to the arguments made under the first point. In arguing the binding effect of the circuit court support order, appellant alludes to the Florida Statutes and rules of procedure under which failure to pay court-ordered support is punishable by contempt. See, §§ 61.17(3) and 38.23, F.S. (1987), and Rule 1.570(c)(2), Fla.R.Civ.P. For the second point, appellant maintains that the department "cannot enter into an order which conflicts with a decision of a circuit court of this state and violates the separation of powers doctrine." As authority, appellant cites Buckley v. Department of Health and Rehabilitative Services, 516 So.2d 1008 (Fla. 1st DCA 1987), and Bentley v. State, 398 So.2d 992 (Fla. 4th DCA 1981).
Finally, while continuing to concede that the federal statutes and regulations do not expressly define "income" and "available," appellant urges nevertheless that decisions from the federal courts are "unequivocal" and "persuasive authority" for the proposition that income a Medicaid applicant uses to pay "court-ordered child support or alimony," cannot be counted as available income in determining eligibility for Medicaid benefits because such income is "truly unavailable." Dept. of Health Services of the State of California v. Secretary of Health and Human Services, 823 F.2d 323 (9th Cir.1987); Grunfeder v. Heckler, 748 F.2d 503 (9th Cir.1984); and Whaley v. Schweiker, 663 F.2d 871 (9th Cir.1981). We note parenthetically the distinction that in this case we deal with spouse support unconnected with divorce, while much of appellant's argument in reliance upon the cases cited pertains to court-ordered child support or alimony. We also distinguish the case law relied upon by appellant on more fundamental grounds, as will be stated later.
At the outset, we observe that in view of the complexities of the law and regulations in this area, the extent to which their application is affected by variations in state laws, and the myriad state and federal policy considerations underlying the Medicaid program, we are encouraged to refrain from sweeping pronouncements as to what may or may not be required or permitted under a state medical assistance plan. The *411 advisability of restraint in this connection is particularly acute in this case. This is so because this case comes to us on extremely modest and limited briefing on both sides, considering the depth of the subject and the potential impact upon the ability of the state to carry out its obligations under the Medicaid law. We note also that we have before us the most meager of records, consisting entirely, except for the few documents presented, of a dialogue between appellant's attorney, the hearing officer, and appellee's attorney. Upon consideration of the record and the briefs and arguments of the parties, we conclude that appellant has failed to demonstrate that the department's denial of eligibility for Medicaid benefits was arbitrary, capricious, or in derogation of applicable law.
We find the assumptions made by appellant concerning the "binding effect" of the circuit court support order unsupportable on any theory. Appellant has not addressed, either here or below, the basis for the court order, nor is it apparent from the record. The order could easily have been the product of an agreement between Jones and his spouse, or absent specific agreement, by mere acquiescence on Jones' part to demands made by his spouse by means of the legal proceeding for alimony unconnected with divorce. In other words, no argument is made here, and nothing in the record indicates that the amount the trial court ordered Jones to pay as support for his wife was based upon an adjudication by the court, after consideration of all the evidence, taking into account the factors governing the making of awards for support unconnected with divorce under Florida law. See, § 61.09, F.S. (1987). If the order was based upon consent, or acquiescence in any one of several ways in which this could occur, then Jones himself made a portion of his income "unavailable" of his own volition rather than by having it wrested from him by the process of law. Income received by the applicant in his own name, to which he has title and the power of disposition, cannot be regarded as other than income "available" to the applicant under the regulations above mentioned.
We are apparently being asked to assume that the support order in this case was the product of an adjudicatory proceeding in which the court weighed the relative needs and financial circumstances of the parties, and determined what portion of Jones' income he was legally obligated to pay to his spouse for her support. This view of the proceedings was not accepted by the department's attorney as a part of the stipulated facts. Furthermore, although we acknowledge the trial court's considerable discretion under the statute to award such amount as it deems "just and proper," appellant would be hard pressed to satisfactorily explain how this 82-year-old institutionalized applicant for medical assistance could realistically be found to have the "ability to contribute" an amount which left him with only $696.90 for his own subsistence and medical needs. See § 61.09, F.S. Even without evidence in the record as to the amount payable monthly for Jones' confinement in the convalescent center, a good indicator of the inadequacy of Jones' remaining unfettered income of $696.90 is demonstrated by comparison with the state income standard for medical eligibility of $881.00 per month. Thus, considering Jones' income level, together with the other circumstances present here, the support order can realistically be regarded as little more than a court-sanctioned transfer or allocation of income between the parties.
However, regardless of how the support order in this case is viewed, the case law relied upon by appellant does not require either the department or this court to attach any greater weight or significance to it than did the hearing officer. In State of Washington v. Bowen, 815 F.2d 549 (9th Cir.1987), the state appealed from a final decision of the Secretary of Health and Human Services disapproving an amendment to Washington's Medicaid plan under which the state sought to calculate income eligibility of married Medicaid applicants under state community property law, instead of under the secretary's "name-on-the-check" rule. The court held that the secretary erroneously rejected Washington's amendment because the secretary's *412 interpretation was contrary to the principle used in the federal statutes and regulations that the term "income" should be defined under state law; the secretary's interpretation failed to take into account that a portion of the married applicant's monthly income belonged to the applicant's spouse under state community property laws; and the secretary's interpretation also was inconsistent with the Social Security Administration's definition of "income" in the Supplemental Security Income program, under which the individual having title to the proceeds of a payment is the one to whom any resulting income must be charged.
In Whaley v. Schweiker, supra, the plaintiff (Whaley) brought an action in federal court challenging denial of his application for supplemental income benefits under the Social Security Act, 42 U.S.C. § 1382a. The issue presented was whether increased pension benefits paid to a disabled veteran for the support of his minor children under the Veteran's Act constitute income to the veteran so as to disqualify him from receiving supplemental income benefits. The court held that such increased pension benefits provided to the veteran for support of his minor children should not serve to reduce his individual entitlement under the Social Security Act. The court, while acknowledging the rule that the secretary's interpretation of a statute he administers is entitled to deference, pointed out that the issue involved interpretation of the Veteran's Administration regulations, to which the Secretary's interpretation is not entitled to deference. The court therefore rejected the Secretary's argument that since the veteran receives the pension in one unapportioned check, he is therefore legally free to use the money for his own purposes, rather than for support of his dependents. The court then engaged in further analysis of the issue, concluding, among other things, that the clear congressional intent that a designated portion of the pension be used for support of the children could not be displaced by "an administrative payment mechanism." 663 F.2d at 874.
Finally, appellant relies most heavily on Dept. of Health, State of Cal. v. Secretary of HHS, supra. In that case, California appealed the decision of the Secretary of Health and Human Services rejecting a proposed Medicaid plan amendment which provided that California community property law would be used to determine how much income is available to each spouse after one spouse has been institutionalized in a nursing home for over one month, and another plan amendment under which California proposed to consider income that a medically needy person uses to pay spousal or child support as unavailable to the payor for purposes of determining Medicaid eligibility. Again, rejecting the Secretary's "name-on-the-check" rule, condemned in Washington v. Bowen, supra, the court found that the Secretary's rejection of the proposed amendments was erroneous. As to the amendment dealing with treatment of married couples' income under California's community property law, the court's decision in Washington v. Bowen was found controlling. As to the proposal regarding court-ordered spousal or child support, the court rejected the Secretary's argument that an exclusion was not permitted under the Medicaid statute, citing Whaley v. Schweiker, supra, and also rejected the Secretary's contention that the "same methodology" provisions of the Medicaid statute incorporated a requirement of "national uniformity," so that states, in formulating their Medicaid eligibility standards, were required to rely on supplemental security income methodologies exclusively. Atkins v. Rivera, 477 U.S. 154, 106 S.Ct. 2456, 91 L.Ed.2d 131 (1986), (the same methodology requirement simply instructs states to treat components of income, for example, interest or court-ordered support payments, similarly for both medically and categorically needy persons). Moreover, the court held, even if it agreed with the Secretary that the states were required to follow SSI eligibility requirements, it could not accept the Secretary's second premise that the absence of an express income exclusion for child or spousal support precludes a state from creating such an exclusion, citing Grunfeder v. Heckler, supra *413 (the list of income exclusions enumerated in 42 U.S.C. § 1382a (b) is not exclusive). The court also referred to its Whaley decision as requiring reversal, noting its determination in that case that the Veteran's Act children's benefits "earmarked for the veterans dependents" could not be used to reduce the veteran's entitlement to supplemental security income benefits. Whaley, 663 F.2d at 874. The court then stated:
Similarly, income that a Medicaid recipient uses to pay court ordered child support or alimony cannot be used to reduce the recipient's Medicaid benefits.
823 F.2d at 328. In a footnote, the court referred to provisions of the California Code under which a court may impose sanctions for default in support payments. Footnote 4, 823 F.2d at 328.
We disagree with appellant's assertion that the holding in the California case (Dept. of Health, 823 F.2d 323) controls the outcome in the case before us. First, we are not here concerned with "child support," though it may be that the rationale for requiring an exclusion for court-ordered child support, as California sought to accomplish by amendment of its medical assistance plan, might well be considered in assessing the need for a rule change in Florida. Next, insofar as the court's opinion deals with court-ordered "alimony," we point out, as we did earlier, that the support order in the case before us was predicated not upon a dissolution proceeding, or even a marital separation, but instead upon what could have been, and most probably was, a court-sanctioned agreement for apportionment of income between Jones and his spouse. Most significantly, however, in our judgment the quoted statement from the Ninth Circuit's opinion to the effect that court-ordered child support or alimony paid "cannot be used" (Id. at 328) to reduce Medicaid benefits should not be read  as appellant argued below and maintains here  as authorizing the use of court proceedings as a device for creating Medicaid eligibility in cases where such eligibility otherwise would not be present. We are not advised as to the administrative regulations of California dealing with Medicaid eligibility, but we surmise that it is highly unlikely that California, or any other state, requires automatic exclusion of court-ordered support payments without inquiry, for example, into the adversarial nature of the proceeding resulting in the order. Some attention would also have to be given, it seems to us, to the establishment of guidelines for review and approval of any support payment ordered in relation to awards in similar cases, considering the circumstances of the parties. The federal law expressly calls for "reasonable standards," and these are required to be "comparable for all groups." 42 U.S.C. § 1396a (a)(17). Any other approach, such as the one advocated by appellant here,[5] would in effect place the question of income eligibility for married applicants substantially in the hands of circuit judges who in Florida are guided largely by an abuse of discretion standard in this area of the law. This would be in direct contravention of the Florida Legislature's assignment of eligibility determination to the department, and would impact adversely on the ability of the state to achieve equity and uniformity in the administration of Medicaid funds.
Since this case is not before us on a rule-making or rule challenge review (sections 120.54 and 120.56, Florida Statutes, respectively), we have no occasion to decide whether Florida could, if it saw fit, expressly provide for exclusion of court-ordered spouse support for eligibility purposes, nor are we confronted with the issue of whether Florida's Medicaid plan and administrative rules are invalid for failure to provide for the consideration of court-ordered support payments in calculating an applicant's countable income. Accordingly, because the appellant has failed to show that the department's determination of Jones' eligibility for ICP benefits is contrary *414 to applicable law or is arbitrary and capricious, we find no basis for reversal.
AFFIRMED.
ZEHMER and BARFIELD, JJ., concur.
NOTES
[1] The style of this case has been changed to reflect appointment of an administratrix following death of the original appellant, William Jones.
[2] Rule 10-2.042, Florida Administrative Code, provides for hearings concerning, among other things, eligibility for medical assistance, to be conducted by a Hearings Officer from the Office of Public Assistance Appeal Hearings, whose orders, pursuant to F.A.C. Rule 10-2.066, are considered as the final order of the agency.
[3] His total income was made up of $527.90 from social security; $507.00 ($169.00 of which was designated by the federal government as being for the benefit of his spouse) from a Black Lung award; and $167.00 from a private pension.
[4] HRS Manual No. 165-4, prepared for the use of staff in determining client eligibility for participation in Florida's Medicaid and state supplementation program incorporates the essential rules governing eligibility, and contains further explanation of policy and procedures to be followed in implementing the program.
[5] At one point in the hearing below, in response to HRS's attorney's argument that the court order for temporary support was "illusory," there being no showing of the existence of statutory grounds for such an order, among other things, appellant's counsel argued to the hearing officer that this was "irrelevant."